No. 28,565.

The People's State Bank of Liberal, *Appellant,* v. The Kismet Equity Exchange Association, *Appellee.*

(281 Pac. 899.)

Opinion filed November 9, 1929.

*M. F. Cosgrove* and *John C. King,* both of Liberal, for the appellant.
*J. W. Davis* and *Russell L. Hazzard,* both of Greensburg, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The litigation in this case between a bank and one of its depositors involves the question of the liability of the bank to its depositor for the loss on a check regularly deposited with the bank, when the loss occurred through the negligence of its correspondent bank in that it sent the check directly to the bank on which it was drawn, and accepted from such bank a draft which became worthless two days later when the bank closed its doors.

The trial court made extensive findings of fact and conclusions of law, and as both parties asked for judgment on the findings of fact they must for the purpose of review be regarded as the facts of the case, unless in some particular they are not supported by the evidence, and our attention has not been directed to any such point. The following is a copy of the findings and conclusions:

"FINDINGS OF FACT.

"1. On the 27th day of September, 1923, one T. H. Rinehart was indebted to the defendant in the sum of $488.62, and on said date executed and delivered to said defendant his check on the Home State Bank of Greensburg, Kan., for said sum.

"2. The defendant held the check mentioned in finding No. 1 in its office at Kismet, Kan., until the 3d day of October, 1923, when it indorsed the same and sent it by mail to the plaintiff for credit and collection.

"3. At the time mentioned in findings No. 1 and No. 2 the defendant had been a regular customer of the plaintiff bank for a number of months and knew that it was the custom of the plaintiff upon receiving checks upon banks outside of the city of Liberal to forward the same to its Kansas City correspondent for collection and this check was transmitted to the plaintiff bank with the expectation that it would be handled in this manner.

"4. The said check was received by the plaintiff bank on the 4th day of October, 1923, and placed to the credit of the plaintiff in said bank and on said date, the plaintiff indorsed said check and forwarded the same to the Commerce Trust Company, its regular correspondent bank at Kansas City, Mo., accompanied by a form letter containing, among other things, the following language: 'Protest all items over $20 not bearing this stamp or similar authority from a preceding indorser with their A. B. A. number. Wire nonpayment of items $500 or over.'

"5. Said check was received by the Commerce Trust Company on October 6, 1923, and said trust company accepted said check for credit and collection by letter to the plaintiff containing the following language: 'All items not payable through the Kansas City Clearing House Association credited only subject to final cash payment. These are forwarded for collection solely at depositor's risk and we will not be liable for any act, omission or default of correspondent or subagents employed, the dishonor of returns received from such correspondents or agents, or for loss of items in the mail.' Said letter was in the usual form used by said trust company in accepting and acknowledging receipt of checks from the plaintiff and the plaintiff forwarded the check in question with full knowledge that it would be accepted by the trust company on such terms only.

"6. The Commerce Trust Company was at all times mentioned in these findings one of the largest banks in the city of Kansas City and was financially responsible.

"7. Said Commerce Trust Company, on or about the 6th day of October, 1923, forwarded said check direct to the Home State Bank at Greensburg for collection, and said check was received by said Home State Bank on October 8 and charged against the account of the said T. H. Rinehart, who had on deposit in said bank more than enough funds to pay said check.

"8. On said 8th day of October, 1923, the said Home State Bank forwarded to the said Commerce Trust Company its draft on said trust company, which was its regular Kansas City correspondent bank, covering the amount of said check and other items, but that said Home State Bank did not at said time have on deposit with the said Commerce Trust Company funds to pay said draft, but was in fact at said time insolvent and was on the 10th day of October, 1923, closed and taken charge of by the bank commissioner of the state of Kansas."

## "Conclusions of Law.

"1. The conduct of the defendant in holding the Rinehart check from September 27 to October 3 constituted such negligence as would have defeated it in an action by or against the maker of the check, but the rights of subsequent holders, including the plaintiff in this action, were in no way affected by such negligence.

"2. The conduct of the Commerce Trust Company in forwarding said check direct to the Home State Bank constituted such negligence as would have rendered said Commerce Trust Company liable to the parties to this action for the loss sustained were it not for the conditions under which it accepted said check from the plaintiff for collection.

"3. The written stipulations in the letter from the Commerce Trust Company to the plaintiff acknowledging receipt of the check relieve the Commerce Trust Company from liability for its negligence in forwarding the check to the Home State Bank.

"4. The conduct of the plaintiff in forwarding the check to the Commerce Trust Company under the terms of the written acceptance by said trust company and the custom existing between plaintiff and the trust company which relieved the trust company from liability for its negligence constituted such negligence on the part of the plaintiff bank as to render it liable to the defendant for the loss sustained by reason of the negligence of the trust company hereinbefore mentioned.

"5. The defendant is entitled to judgment for its costs."

The court held the plaintiff bank liable to the defendant for the negligence of its correspondent bank in sending the check directly to the bank on which it was drawn on account of .the plaintiff bank having selected a correspondent bank that relieved itself of substantially all liability, and rendered judgment against plaintiff and in favor of defendant for costs, from which the plaintiff appeals.

Appellant presents its argument on the assignments of error under three headings:

1. Delay of defendant was proximate cause of loss.

2. Plaintiff was not negligent.

3. Plaintiff was not liable for acts of correspondent.

We will consider these questions in the order named. The findings show that the appellee held the check for six days, and there can be no question as to such delay constituting negligence and under slightly different circumstances might have been not only the proximate cause but the whole cause of the loss. It is not so much the length of time that the check is held that affects the liability of the parties as the relation of that delay to the result attained. In one of the cases cited by appellant, *Anderson v. Elem,* 111 Kan. 713, 208 Pac. 573, the payee of the check held it twenty-four days before presenting it and as between the indorsee and the drawer it was held not to be an unreasonable time. The drawer had stopped payment on it the morning after it had been given. It was there held that the indorsee could recover notwithstanding the delay.

The appellant's argument would be conclusive if the bank at Greensburg had failed before the check arrived there, or if Rinehart had checked out all his funds before the check reached the bank. In either case the delay of the appellee would have been the proximate cause of the loss. But notwithstanding this unnecessary or negligent delay of six days, the check reached the bank in time, the

bank was still open, the money was still there, and the check was paid and turned back to Rinehart, the drawer. Where was the loss on account of this delay? There was none. Of course, it is the thought of the appellant that this payment was only two days before the bank closed its doors, and if the check had been sent promptly it would have been there eight days before the failure, which would have given more time to cash the draft the bank gave for the check instead of cash. Unless the loss is the direct result of the delay and can be ascribed to it in some way, the delay is not the proximate cause of the loss, and this is especially true if there is some independent intervening cause directly connected with the loss.

"The term 'proximate cause' as applied to the law of damages is apparently incapable of any strict definition which will suit the terms of every case. Broadly, however, an act or omission is the proximate cause of a loss where there is no intervening, independent, culpable, and controlling cause, or, in other words, where there is an unbroken connection between the act and the damage." (17 C. J. 734.)

"Where there is an intermediate cause disconnected from the primary act and self-operating which produces the injury, it will be regarded as the proximate cause and the author of the original act will be discharged." (17 C. J. 735.)

"Proximate Cause. That which, in a natural and continuous sequence, unbroken by any new cause, produces an event, and without which the event would not have occurred." (3 Bouvier's Law Dictionary, p. 2762.)

"Negligence or other unintentional wrong does not furnish a foundation for a cause of action for damages unless it was the proximate cause of the injury sustained.

"The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred.

"If two distinct causes are successive and unrelated in their operation, one of them must be the proximate and the other the remote cause. In such case the law regards the proximate as the efficient and responsible cause, and disregards the remote." (*Railroad Co. v. Justice,* 80 Kan. 10, syl. ¶¶ 1, 2, 3, 101 Pac. 469.)

The second and third headings will be considered together.

It is urged by the appellant that the plaintiff was not negligent, that there were no allegations in the pleadings making the negligence of the plaintiff an issue, and that there is a distinction between being negligent for having sent the collection to a correspondent, which by its written acceptance thereof relieved itself from practically every liability, and being responsible for the negligence of its correspondent. As to there being allegations of plaintiff's negligence

in the answer, there can be no doubt after reading the last paragraph before the prayer. It is true the answer does not contain specific allegations as to the relief with which the Kansas City correspondent clothed itself in its printed acceptance of the check, nor any allegation that the sending of the check by the plaintiff constituted negligence as stated in the conclusions of law, but pleadings "are the written statements by the parties of the facts constituting their respective claims and defenses" (R. S. 60-701), and are not framed to indicate in advance the conclusions of law based upon those facts. The answer alleges plaintiff sent the check to the Kansas City correspondent as its agent and that the correspondent negligently sent the check directly to the bank on which it was drawn, and concludes, "that by reason of the premises the plaintiff is indebted," etc.

The language of the fourth conclusion of law is readily capable of the construction placed on it by the appellant in that the conclusion reached is that the negligence of the plaintiff consisted in sending the check to a correspondent that announced itself as voluntarily irresponsible instead of being liable for the negligence of its agent or representative. The effect of the conclusion is, however, that the negligent conduct of the plaintiff in sending the check to this correspondent rendered it liable for the loss sustained by the negligent conduct of the correspondent. Suppose the plaintiff had committed the check to the hands of an irresponsible youth for collection, would it not have been negligence on the part of the plaintiff bank for placing it in such hands if the youth had lost the check or failed to return with the cash? The analogy is absolutely applicable. The correspondent, although in fact highly responsible financially and otherwise, voluntarily stripped itself of practically every vestige of responsibility in accepting the trust. It was unquestionably negligent for the plaintiff, knowing the custom and plan of this correspondent, that it would relieve itself of substantially all responsibility, to commit such important business to it. Appellant insists that defendant knew that the check would be collected through a correspondent bank and that plaintiff would send it to some bank for this purpose. Although the defendant knew this custom, he had a right to rely upon its being sent to responsible parties, so as to protect him in every reasonable way. Appellant maintains that when it has used reasonable care to select a responsible agent or correspondent, its duty to the depositor has ended, and cites a num-

ber of authorities in support of such holding. This rule, as stated by a well-recognized authority, is as follows:

"The weight of authority on the question of liability of a collecting bank for the default of its correspondents or agents favors the rule against such liability, and holds that the initial bank is liable to the depositor for the default of a correspondent bank only in the event that it has failed to exercise reasonable care in the selection of its agents and correspondents." (Brady on Bank Checks, 2d ed., p. 446.)

Did the plaintiff use reasonable care in the selection of its agent or correspondent when it selected one known to it to have made itself voluntarily irresponsible for loss occurring under its charge and that of its agents and representatives? There can be but one answer to this question, and that is in the negative. By applying this rule in this case, we are not assuming to adopt it as the rule in Kansas; we are simply applying it as urged by the appellants to the facts in this case. It is the most favorable of all rules and theory as to the liabilities of original banks for the negligence of their correspondent banks. We hold that the plaintiff was negligent in not using reasonable care in the selection of a responsible agent or correspondent bank, and that it is therefore liable to the plaintiff for the negligence of such correspondent bank. The appellant concedes the correspondent bank was negligent, but insists it should respond to the defendant directly. The negligence of the correspondent bank consisted in sending the check directly to the bank on which it was drawn and accepting a draft instead of cash. This has for a long time been held to be negligence in this state, and for good reasons should continue to be so held.

"It is negligence in the holder of a check to send it directly to the drawee, residing in a distant place, for payment, and the holder is responsible for any loss occasioned by adopting such a course." (*Anderson v. Rodgers*, 53 Kan. 542, syl. ¶ 2, 36 Pac. 1067.)

The apparent confusion as to the application of the conclusions of law to the pleadings is not material or serious. The whole case is here for the purpose of reviewing the conclusions of law. We have the facts found by the court, which are substantially within the allegations of the pleadings and are supported by the evidence, and on these facts we have reached conclusions of law substantially the same as the trial court.

The judgment is affirmed.