No. 30,027.

SCHOOL DISTRICT No. 12 IN OTTAWA COUNTY, *Appellant*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF OTTAWA and H. A. POPHAM, County Treasurer, *Appellees*.

(2 P. [2d] 88.)

Opinion filed July 3, 1931.

*F. D. Boyce,* of Minneapolis, *J. V. Humphrey* and *A. S. Humphrey,* both of Junction City, for the appellant.

*L. A. McNally,* of Minneapolis, *C. W. Burch, B. I. Litowich* and *LaRue Royce,* all of Salina, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This action is by school district No. 12, Ottawa county, against the county treasurer and board of county commissioners of Ottawa county, to recover something more than $7,700, alleged to be in the hands of the county treasurer, belonging to the plaintiff school district. The answer of the defendants was a general denial and allegations of having overpaid the plaintiff school dis-

trict in the sum of $1,246.64, and the answer concluded with the prayer for the recovery of that amount from the school district.

The failure of the Minneapolis National Bank, one of the depositaries of the county funds, and the issuance of a subsequent or duplicate check by the county treasurer gives rise to the controversy.

The whole matter is reduced to one legal question and that is, Was the first check for $9,000, issued by the county treasurer, a payment to the school district? If it was the school district has been overpaid by the issuance of the second check for $9,000 to the extent of $1,246.64. The trial court made findings of fact and conclusions of law in favor of the defendants and rendered judgment for defendants against the plaintiff school district for $1,246.64, from which judgment the plaintiff appeals.

The appellant accepts the findings of fact as the facts in the case and assigns error as to the conclusions of law as follows:

"1. In overruling appellant's motion for judgment on the findings of fact.
"2. In sustaining appellees' motion for judgment on the findings of fact.
"3. In overruling appellant's motion for a new trial.
"4. In rendering judgment in favor of appellee as against this appellant."

The essential points in the findings of fact are as follows: On February 4, 1929, the plaintiff school district issued an order upon the county treasurer in favor of its school-district treasurer, Mrs. H. D. Billings, for $9,000, which was less than the amount in the hands of the county treasurer belonging to the school district on that date. On February 5, 1929, Mrs. Billings, through her husband, H. D. Billings, president of the State Bank of Delphos, which was located fourteen miles from Minneapolis, the county seat of Ottawa county, presented the order of the school-district board to the county treasurer for payment, and the county treasurer at once that day in payment of the order issued his check upon the Minneapolis National Bank to the order of Mrs. Billings, school-district treasurer, in the sum of $9,000. Mr. Billings was duly authorized by his wife to represent her in this matter, although he had no official connection with the school district. The Minneapolis National Bank was located two blocks from the courthouse where he received the check from the county treasurer late in the afternoon of February 5. When the check was received by Mr. Billings he delivered the school-district order to the treasurer with the following indorsement thereon: "Received amount of order, Mrs. H. D. Billings, State Bank of Delphos, Delphos, Kansas, H. D. Billings,

Pt." The check on the Minneapolis National Bank was not presented to that bank for payment on that day, nor on the following day, nor presented for collection to any other bank in the town of Minneapolis, but was on the 5th day of February indorsed as follows: "Pay to the order of Fidelity Nat'l Bank, Kansas City, Mo., Mrs. H. D. Billings, by H. D. B.," and the check was mailed on the same day by the husband of the school-district treasurer from the Ottawa County Bank in Minneapolis, Kan., to the Fidelity National Bank and Trust Company of Kansas City, Mo., with the following directions: "I am inclosing for credit to the account of the State Bank of Delphos, check number 11,636 upon the Minneapolis Nat'l Bank, Minneapolis, Kan., for $9,000. We can use another $10,000 or $15,000 of paper if it is convenient." The State Bank of Delphos did not indorse the check, but thus sent it to the Fidelity National Bank, its correspondent in Kansas City, Mo.

Mrs. Billings kept her account as treasurer of the plaintiff school district at her husband's bank, the State Bank of Delphos, and upon the 6th day of February her husband gave her, as treasurer of the school district, credit on the books of the bank for $9,000. She has no account as treasurer or otherwise with the Fidelity National Bank of Kansas City, Mo.

The check was sent by her husband to the Fidelity National Bank not for collection and remittance but for collection and deposit, and upon receipt thereof the Fidelity bank gave credit on its books to the State Bank of Delphos for the amount of the check. The Fidelity National Bank on February 6 indorsed and delivered the check to the Federal Reserve Bank, at Kansas City, Mo., for collection, and the Federal Reserve Bank immediately gave credit to the Fedelity bank for the amount of the check and indorsed the check and transmitted it by mail, with other items, directly to the Minneapolis National Bank at Minneapolis, Kan. The aggregate amount of all the items thus transmitted, including the $9,000 item, was $22,030.32. The Minneapolis National Bank, the drawee of the check and the other items, received the same on February 7, and on the same day transmitted to the Federal Reserve Bank in payment of these items two drafts, one on the Fidelity National Bank for $9,030.32. The $9,000 check was that day stamped by perforations "Paid 2-7-29," and the amount of the check was that day charged to the defendant county treasurer upon the books of the Minneapolis National Bank and the check was paid February 7,

1929. The two drafts that were sent on the 7th of February to the Federal Reserve Bank at Kansas City were received February 9, but before they were received that day both the Federal Reserve Bank and the Fidelity National Bank had been notified that the Minneapolis National Bank was closed, and no showing was made why the $9,030.32 draft was not returned to the Fidelity National Bank upon which it was drawn on February 8, nor why both drafts were not in due course presented on February 8. On February 9, when the draft of $9,030.32 was presented by the Federal Reserve Bank to the Fidelity National Bank, it had on deposit to the credit of the Minneapolis National Bank the sum of $17,819.38. The Federal Reserve Bank on February 9, when the $13,000 draft reached it, had on deposit to the credit of the Minneapolis National Bank the sum of $13,372.79. On February 4, 5, and 6, 1929, the county treasurer had on deposit in the Minneapolis National Bank more than $51,000, and on February 7, after payment of the $9,000 check on the account, he still had on deposit in that bank more than $41,000, and he continued to have on deposit in that bank on February 8 and 9 more than $41,000; that on February 5, the day on which the check was issued, the Minneapolis National Bank had cash and cash items in its bank to the amount of more than $43,000; on February 6, to an amount of more than $18,000, and on February 7, at the close of business, an amount of more than $6,600. On each of these dates, however, the actual cash in the bank was approximately $4,000. In addition to the above cash items the Minneapolis National Bank had upon each of the above-mentioned dates, after deducting the amount of the drafts drawn by it upon its accounts in other banks, an amount in excess of $40,000, and on the 9th of February, after the bank had closed, it had on deposit in other banks more than $41,000, and after deducting the two drafts above mentioned it still had on hand in other banks more than $10,-000; that it was customary in February, 1929, for country banks not to carry large amounts in their vaults as a matter of safety, and that the Minneapolis National Bank had arrangements whereby it could speedily provide cash in larger amounts if the same was required.

The court further found:

"On February 7, 1929, the Minneapolis National Bank had insufficient money on hand wherewith to pay the items aggregating $22,030.32, which it that day received from the Federal Reserve Bank as aforesaid."

"The holder of said check in the sum of $9,000 issued by the defendant treasurer to Mrs. H. D. Billings, treasurer, upon February 5, 1929, was negligent in not presenting it to the Minneapolis National Bank for payment before the close of business upon February 6, 1929. The agent of the holder of said check, the Fidelity National Bank and Trust Company, was negligent in sending said check through the Federal Reserve Bank of Kansas City, Missouri, to the Minneapolis National Bank, upon which it was drawn, for collection; and the Federal Reserve Bank of Kansas City, Missouri, was negligent in forwarding said check for collection to the Minneapolis National Bank, upon which it was drawn."

"If said check had been presented to the Minneapolis National Bank by the holder thereof before the close of business upon February 6, 1929, it would have been paid.

"If said draft remitted by the Minneapolis National Bank to the Federal Reserve Bank upon February 7, 1929, had been presented to the Fidelity National Bank and Trust Company upon February 8, 1929, it would have been paid."

"The defendant treasurer was not responsible for the sending of his said check, issued February 5, outside of the state of Kansas for deposit and collection.

"Upon February 13, and upon the representations of the State Bank of Delphos that said check, dated February 5, 1929, had not been paid, the defendant treasurer, without authority to do so, issued his check in the sum of $9,000 to the State Bank of Delphos, drawn upon the State Bank of Delphos, in lieu of said check issued February 5, 1929; and upon February 14, 1929, without indorsement, the State Bank of Delphos stamped said check by perforation: 'Paid 2-14-29,' and charged the same to the account of the defendant treasurer, in the State Bank of Delphos. The plaintiff school district received upon this check the sum of $9,000."

The conclusions of law made by the trial court are as follows:

"(1) The plaintiff accepted the check of the defendant treasurer, issued by him, in full payment of plaintiff's warrant drawn upon him and presented to him for payment February 5, 1929.

"(2) The check of the defendant treasurer, issued and delivered by him to the treasurer of the plaintiff at the former's office in Minneapolis, Kansas, upon the Minneapolis National Bank (which had its banking house in said city), should have been presented to said bank for payment either that or the succeeding business day.

"(3) The holder of said check was negligent in sending said check out of the state of Kansas for deposit and collection.

"(4) None of the banks, the State Bank of Delphos, nor the Fidelity National Bank and Trust Company, nor the Federal Reserve Bank, as collecting agent, could relieve itself from responsibility of due care in the collection of a check or draft by its rule that it gives credit for the same with the right to charge the amount thereof back in the event it is not finally paid.

"(5) The check issued by the defendant treasurer, upon February 5, 1929, was paid by the Minneapolis National Bank upon February 7, 1929.

"(6) The check, dated February 13, was issued by the defendant treasurer under a mistake of fact and without authority of law.

"(7) Neither of the defendants is responsible for the method adopted or the delay occasioned by the holder of the check of the defendant treasurer, issued and delivered by defendant treasurer to the plaintiff upon February 5, 1929, in the collection and remittance thereof for deposit in Kansas City, Missouri.

"(8) The defendants are entitled to judgment in their favor against the plaintiff in the sum of $1,246.64, with interest thereon at the rate of six per cent per annum from November 18, 1929."

The four grounds upon which the appellant contends the conclusions of law are erroneous are stated in its brief as follows:

"1. That the rule of 'diligence' applicable to commercial paper does not obtain in the transfer of funds from the county treasurer to any of the political subdivisions.

"2. That granting legal 'negligences' in the collecting of the check, no 'loss' resulted therefrom.

"3. That the alleged 'negligences' are not attributable to the school treasurer.

"4. That issuance of the second check was a settlement of the controversy."

A matter which is frequently urged and pressed throughout the brief of the appellant in the presentation of its position on the above-stated propositions deserves preliminary consideration so that we may not be viewing the situation from different angles. It is the denial of the authority of Mr. Billings or anyone but the school-district treasurer to indorse the check. The findings of the trial court cover the authority from the school-district treasurer to her husband as her agent to present and surrender the school-district order and receipt for the check, but appellant properly insists that this authority falls short of authority to indorse and forward the check for collection or deposit. The court seems to have made no finding as to such further authority, and by reference to the pleadings perhaps such omission was intentional because it was not a matter in issue under the pleadings. The answer alleged:

"Upon February 5, 1929, the said Mrs. H. D. Billings as treasurer of the plaintiff, school district, acting by her husband and agent, H. D. Billings, who was by her then and there duly authorized so to do, indorsed said check to the order of the Fidelity National Bank of Kansas City, Missouri, and transmitted said check to the Fidelity National Bank and Trust Company of Kansas City, Missouri."

And the reply thereto is that plaintiff "admits and alleges that the said Mrs. H. D. Billings as treasurer as aforesaid on February 5, 1929, caused said check to be forwarded to the Fidelity National

Bank and Trust Company of Kansas City, Missouri, for collection"; and further, "that it had long been customary for the said Mrs. H. D. Billings to collect plaintiff's money from said county treasurer by means of checks for the same of the county treasurer and to deposit such checks of the county treasurer with the State Bank of Delphos, and to have the last aforesaid bank collect the same in due course according to the banking usages."

Causing a check to be forwarded for collection in due course according to banking usages includes the necessary indorsement. Under such pleadings and admissions the illegality of the indorsement is not an issue. To make the situation comparable with a forged or other illegal indorsement would require entirely different pleadings.

One other feature is frequently pressed as being within the findings that the Minneapolis National Bank could not have paid the check any time after its issue, referring to the insufficiency of the cash on hand as found by the court, but we cannot take that finding as segregated from the other findings giving the amount of cash and cash items had in the bank on the day the check was issued and each and every day thereafter until the bank closed, and also the finding of the arrangement the bank had to provide cash in large amounts whenever needed. We think the findings when taken and considered together are such as would not authorize this court, since the findings are accepted as the facts in this case, in concluding that the ability of the bank to meet the check during the time involved was limited to the actual cash on hand.

The rule of diligence to which reference is made is by virtue of the provisions of a section of the negotiable-instruments act, R. S. 52-1703, which is as follows:

"A check must be presented for payment within a reasonable time after its issue or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay."

This rule has been interpreted in *Anderson v. Elem*, 111 Kan. 713, 208 Pac. 573, and other decisions, to be a reasonable time depending upon the facts and circumstances of the case.

R. S. 79-1801 authorizes the county treasurer to collect school-district levies and pay the same, when collected, to the school-district treasurer. R. S. 19-530 provides for the designation of a depository for all the funds collected by the county treasurer. R. S. 72-1018 requires the county treasurer to pay the school-district treasurer all moneys belonging to the district upon the presentation

of an order from the board stating that the district treasurer has furnished a bond as required by law, and R. S. 19-534 permits the county treasurer to make such distribution by check or draft on the county depository.

No statute is cited which exempts a school district or its treasurer from the application of the rule of diligence or makes any exception of persons whatever, but the general rule seems applicable to all persons that the time must be reasonable considering the nature and character of the business, the purpose for which the funds are to be used, and the distance, convenience and all surrounding circumstances.

Three cases are cited to show the county treasurer was apparently exempt from the rule of diligence in cashing the checks of taxpayers where the checks were good when given, but for different reasons the treasurer was unable to realize upon them when he in the course of his business attempted to do so. One feature runs through all three cases which is clearly expressed in the earliest one of them, viz., *Barnard v. Mercer*, 54 Kan. 630, 39 Pac. 182, that there is no authority for the payment of taxes by check or draft and any attempted payment by check or draft is not a payment until the actual money is realized upon the check. In this case it was said:

"A county treasurer has no authority to receive a draft in payment of taxes, and where a draft is sent for that purpose, if payment is refused by the drawee, the county treasurer, even after having issued a tax receipt and marked the taxes 'Paid' on the tax roll, may proceed to collect the taxes from the lands against which they are charged." (Syl. ¶ 1.)

The other two cases cited in this connection are *Skinner v. Mitchell*, 108 Kan. 861, 197 Pac. 569, and *Beloit Building Co. v. Staley*, 118 Kan. 141, 234 Pac. 57, in both of which the trouble arose because a bank failed before the treasurer realized on the checks given for taxes. There is no hint in either of them that the county treasurer is in any way exempt from the rule of diligence, although the intervening time in each case would very likely have been held to be unreasonable had the delay been by an ordinary individual, but the distinction, instead of being based upon the fact that the payee was a county official, was specifically placed upon the statute, which provides:

"That where any draft or check remitted to any county treasurer shall not be paid on presentation, any tax receipt issued to any such person shall be forthwith canceled by the county treasurer on his books, noting on his records

that such receipt is canceled for nonpayment of the check or draft sent in payment thereof." (R. S. 19-518.)

A fourth case is cited by appellant in the same connection which involves a slightly different set of facts, but the opinion very logically shows that the whole question is to be determined by one fact only, and that fact is the actual payment of the taxes. Here the taxes had been paid to a county depository, full credit had been given to the account of the county treasurer and he had recognized the payment and credit by drawing down part of the funds and leaving the balance on deposit under bond, and had received and accepted credit for monthly interest on the tax payments. The court distinguished between the cases above cited and others, and held the taxes had been paid and that was the real question involved. Of course, a check is only a conditional payment by whomsoever given or received, and reasonable diligence must be exercised to collect it under the rule of diligence if a loss is occasioned by delay, but the county treasurer is, under the statute, never bound by checks tendered in payment of taxes and is by statute authorized to make distribution by check or draft.

There is no question but that the county is responsible for the safe-keeping of the school-district funds until they are actually paid over to the district, as was said in the case of *Myers v. Kiowa County*, 60 Kan. 189, 56 Pac. 11. The same principle was emphasized in the case of *School District v. Roanoke State Bank*, 126 Kan. 122, 267 Pac. 35, where it was said:

"If the school-district treasurer cannot provide a safe place for the district funds in his own home or place of business, there is one perfectly safe place for them until they are needed to pay bills for teachers' salaries and current expenses. He can let them remain in the county treasury, in the custody of a public officer who is equipped to take care of them." (p. 124.)

The same case shows plainly that there is no exemption from the rule of diligence for a school-district treasurer. It was there said:

"The theory of the law relating to school-district moneys is that the treasurer's accountability therefor is unqualified, and if the funds are not instantly forthcoming by him when needed to pay bills, or when his successor in office requires them at his hands, it will be no excuse for him that with the sanction of the school board or by its order he deposited the funds in a bank, and that they have been lost or tied up by its insolvency." (p. 125.)

While the law in the last two cases cited may be applicable to some features of the case at bar, yet the situation is changed by the voluntary act of the school-district treasurer in this case. She could

with perfect safety have left the funds in the hands of the county treasurer, but she did not do so. Perhaps they were needed by the district for teachers' salaries and other expenses, but an order was issued to draw down $9,000. Now possibly she as treasurer could have carried this order with absolute security before presenting it, but she presented it the day after it was issued. Again, it might be argued that she could have carried for a long time the check issued to her and still have relied upon the responsibilty of the county treasurer for the safe-keeping of the funds represented by her check, but she used the check in due course according to banking usages the very day and hour her agent received it, and took credit for it the next morning on the books of her usual depository. So all the argument in favor of her right to delay and exemption from the rule of diligence is out of harmony with her own action in having it forwarded the same hour it was received.

The Texas case cited, *State v. Tyler County State Bank*, 277 S. W. (Tex. App.) 625, is a decision based as our own cases are upon a statute, and the decision simply interprets the statute requiring the payment of state taxes from a depository of public funds to be in money, and holding the depository liable until the check is paid.

Was the negligence, as found by the trial court, on the part of the banks attributable to the school-district treasurer? Her reply admits she, as treasurer, caused said check to be forwarded to the Fidelity National Bank for collection. It could have been presented to the drawee bank the next day, and the court finds it was negligence on the part of the holder not to do so. She was the holder until she caused it to be forwarded to the Fidelity National Bank. So she was responsible for the possibility of the banks being negligent. She caused it to be forwarded to Kansas City. The Delphos bank did not indorse the check.

Appellant insists that no loss resulted from the alleged negligent acts. This contention is supported by the appellant upon the argument and theory that the check given by the county treasurer was never paid. The court found that it was paid on February 7, when it was charged to the account of the county treasurer by the drawee bank. The funds of the county treasurer were thereby reduced by that amount, and the fact that the Federal Reserve Bank accepted drafts that were not paid does not change the situation. The finding showing that all three of the collecting banks charged

back the entries formerly made, giving credit as the check passed through their hands, does not prevent the county treasurer from sustaining the loss of the full amount of the check paid and so marked by perforation on February 7. One of the tests properly applied to determine whether or not there is a loss is by inquiring if an action could be maintained on the depository bond for recovery of the amount of this check marked paid. It would seem such an action could not readily be maintained.

"Where the depositor held a check six days before depositing it and it reached the bank two days before it closed its doors, and it was paid out of the funds to the credit of the drawer and check was canceled and returned to drawer, but the correspondent bank sent the check directly to the bank on which it was drawn and accepted from it in lieu of cash a draft which two days later was worthless, there was negligence in both transactions, but the delay in depositing the check was not the proximate cause of the loss, the latter incident being a distinct, intervening and unrelated cause." (*People's State Bank v. Equity Exchange Ass'n,* 129 Kan. 38, syl. ¶ 1, 281 Pac. 899.)

"The fact that the loss would have fallen on the depositor if a check held for collection had not been presented sooner than it was necessary where the bank failed before the time for collecting it expired does not relieve the collecting bank of liability for the loss, if, having presented the check before such failure and accepted the drawee's check on another bank in payment, it delays presenting the latter until it is worthless because of the failure of its drawer. That a higher degree of diligence is demanded under facts like these than that which obtains between the parties to the instrument is obvious, because the drawer of the original check must be held to have contemplated that when presented it would be paid in money only, and the payee and drawee have no right, except at their own peril, to substitute some other mode of settlement which results in injury to the drawer." (21 R. C. L. § 68.)

Some of the authorities cited in the reply brief refer to the giving of an original check, which is, of course, only a conditional payment, but the giving of a subsequent check by the drawee bank does not always come under the same rule, for then there is an added responsibility on the collector bank as representing another which modifies the general rule, as is discussed in 21 R. C. L., sections 66, 67 and 68.

An examination of all the authorities cited and applied to the facts in this case convinces us there was a loss, and that the findings and the acts and transactions narrated therein show that the check was actually paid and the funds of the county treasurer were reduced.

The fourth claim of the appellant is that the issuance of the second check was a complete settlement between the parties. The county

treasurer is only a ministerial officer and not possessed of discretionary powers. His duties are outlined by statute and he has no power to make settlements by the use of public funds in his hands or subject to his check. (*State, ex rel., v. Younkin,* 108 Kan. 634, 196 Pac. 620.)

Neither would the acts of the county treasurer work an estoppel against the county with regard to the funds in his hands. In the case of *Skinner v. Mitchell,* 108 Kan. 861, 197 Pac. 569, at page 870, it was said:

"The principles of law upon which this claim is predicated are sound and have received the fullest sanction of courts when applied to controversies arising between individuals, but in controversies arising between undividuals and the public these principles have no room for application. All money from the payment of taxes is public money and belongs to the county. The powers and duties of the county treasurer and county clerk in respect to public money and the payment of taxes are defined by statutes, and the county will not be estopped by misinterpretation of the statutes by either officer. The county cannot be estopped by any unauthorized act of the treasurer or clerk in respect to public money." (See, also, *Hopper v. Nation,* 78 Kan. 198, 96 Pac. 77; and *In re Moseley's Estate,* 100 Kan. 495, 164 Pac. 1073.)

The first check was issued February 5, marked paid February 7, drafts issued same day by drawee bank to pay same. Bank closed February 9, and second check issued February 13. We have no hesitancy in concluding, as the trial court did, that it was issued under a mistake of fact and without authority of law.

We find no error in the conclusions of law based on the pleadings and facts as found by the court.

The judgment is affirmed.

HARVEY, J., dissenting.

BURCH, J., not sitting.