No. 30,796.

THE CITY OF PLAINVILLE, *Appellant*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF ROOKS and WALTER E. FLEMING, as County Treasurer, etc., *Appellees.*

(19 P. 2d 719.)

 Opinion filed
March 11, 1933. .

*C. W. Burch, B. I. Litowich* and *LaRue Royce,* all of Salina, for the appellant.

*F. E. Young, O. O. Osborn* and *W. K. Skinner,* all of Stockton, for the appellees.

The opinion of the court was delivered by

Dawson, J.: This was an action to determine whether the city of Plainville or Rooks county should suffer a considerable loss of public funds resulting from the failure of the First National Bank of Plainville.

The circumstances giving rise to this controversy were mainly these:

The Plainville bank, was a county depository under an $1,800 bond. Pursuant to a common but unauthorized practice of county treasurers, and for the convenience of taxpayers, duplicate tax lists were sent to the bank at tax-paying time so that taxpayers residing in the vicinity could pay their taxes without the necessity of going to the county seat. At such times the resultant sums of county funds in the Plainville bank would mount to figures far in excess of the sum protected by the bank's bond as a county depository. It had been a practice of the bank to give an additional temporary bond to protect the surplus county funds accumulating in the bank at tax-paying time. At the tax-paying season of December, 1927, the Plainville bank promised to give the accustomed additional bond, but failed to do so. By January 9, 1928, county funds amounting to $11,238.33 had accumulated in the bank. On that day the county treasurer telephoned the cashier of the bank and delivered a peremptory oral order of the board of county commissioners, then in session, "to bring or send that money over or we [they] would be after it that afternoon."

As it happened, but unknown to the county board, the bank was in serious financial difficulties. The assistant cashier of the bank, a Miss E. M. Fesler, was the treasurer of the city of Plainville; and the bank cashier, after talking with her, suggested to the county treasurer that he send over the city funds as a method of satisfy-

ing the county board's demands for the immediate surrender of the excess county funds in the bank.

Accordingly, on the same day, January 9, 1928, the county treasurer drew a check on the First National Bank of Plainville, county depository, countersigned in form by the county clerk and payable to the order of E. M. Fesler, treasurer of the city of Plainville, for $11,166.99, on account of Plainville city. Accompanying this check was a letter of transmittal, which read:

"STOCKTON, KANSAS, January 9, 1928.
*"Miss E. M. Fesler, Plainville, Kansas.*

"DEAR MADAM—Inclosed you will find check for Plainville's apportionment of last 20% 1926 taxes and 50% 1927 less uncollected paving tax and check of December 20, as shown on slip inclosed.

"Very truly yours, WALTER E. FLEMING, *County Treasurer."*

"OFFICE OF COUNTY TREASURER, ROOKS COUNTY,
"No. 996. STOCKTON, KANSAS, Jan. 9, 1928.
"THE FIRST NATIONAL BANK, PLAINVILLE, KANSAS.

"Pay to the order of E. M. Fesler, Treas. Plainville City, $11,166.99. Eleven Thousand One Hundred Sixty-six Dollars and ninety-nine cents.

"WALTER E. FLEMING, *County Treasurer.*
"On account of PLAINVILLE CITY.
"Countersigned, R. E. SOUTHARD, *County Clerk.*
"(Seal.)"

Miss Fesler received this check and letter the following day, but she did not present it for payment. Owing to her position as assistant cashier, she knew the fact to be that so great a sum of money would not only completely exhaust the bank's ready cash, but that the check would also require the bank to draw on its reserve deposits in Kansas City—if, indeed, the bank could have been kept open for the transaction of business while these resources could have been made available to pay the county treasurer's check in full. (This point may require consideration later in this opinion.)

Nothing further in the business relations between the county treasurer and the county board on the one hand and the bank as a county depository on the other occurred after the transaction just stated; and Miss Fesler, as city treasurer, gave no hint to the county treasurer that she was withholding the check from presentation. Matters rested in that status until January 23, 1928, when the bank failed to open on account of insolvency. Following that incident the city treasurer returned the unpresented check to the county treasurer, with a pencil notation on his letter of transmittal, as follows:

"I had not succeeded in figuring this out satisfactorily and failed to get it in before the close—so am returning check to you.

"E. M. Fesler, City Treas."

Thereafter the city made demand on the county for the sum involved in the foregoing transaction, $11,166.99, and on its rejection this lawsuit followed.

On the issues formulated, a trial was had without a jury. Findings of fact were made in consonance with our summarized statement above. Some of these read:

"6. Neither the defendant board, nor the treasurer, nor anyone representing it, had any knowledge of the failing condition of said First National Bank of Plainville prior to the day it ceased to open its doors on January 23, 1928. Said city treasurer did know of the condition of said bank at all times, January 9 to January 23, 1928, both dates inclusive. Said city treasurer never communicated with the county treasurer of said defendant board, or anyone for defendant, subsequent to the time she received the letter referred to, dated January 9, 1928, until the 24th day of January, 1928, when she returned the letter and check, on which was the pencil notation shown in plaintiff's exhibit 5.

"7. The defendant board and the county treasurer believed said check was cashed and the payment of said funds due the city of Plainville had been fully paid, and had no other knowledge nor reason for changing their belief on that subject until the bank failed to open its doors on January 23, 1928.

. . . . . . . . . . . . . . . .

"9. The said The First National Bank of Plainville was solvent at the time the treasurer of plaintiff received said check, and remained solvent to and including January 21, 1928. On January 9, 1928, and at the time of the receipt of said check by said city treasurer of said city of Plainville, the defendant had on deposit in said bank more than an amount necessary to pay said check.

"10. If said check had been indorsed and deposited to the credit of said city of Plainville by the city treasurer at the time she received it, and if an attempt had been made to withdraw the full amount of said check from the bank on that day, there would not have been sufficient funds to have paid said check in full, but said bank had on deposit in banks in Kansas City, Missouri, subject to its check or demand, ample funds to have paid said check in full and to have continued business. . . .

"11. The city treasurer of Plainville did not neglect to cash said check and transfer the account represented by said check from Rooks county to the city of Plainville because of the lack of cash in said bank, nor because she did not understand what funds of Plainville city should be credited with the proceeds of said check, but failed to cash said check as a protection to said bank, believing, as she testified, that her allegiance was first to said bank.

"12. The request for funds of the city of Plainville to be remitted, as referred to above, was made by said bank and said city treasurer to prevent the board of county commissioners from going to Plainville on January 9, 1928,

and drawing all moneys then on deposit belonging to defendant except the sum of $1,800.

. . . . . . . . . . . . . . . .

"14. It had been the custom of the treasurer of defendant, in remitting to the city of Plainville the amount due it, to remit to said city treasurer by issuing the check of its treasurer, duly countersigned by the county clerk of said defendant, to said city treasurer, and said city had never refused to accept such remittance on the ground that such remittance was not in cash, nor on any other ground."

On these findings the trial court made certain conclusions of law, some of which read:

"1. The transmission of the check for $11,166.99 was, under the facts in this case, a payment by the defendant to the plaintiff of the amount represented·by said check, for taxes due from and held by the defendant for said city.

"2. The payment of the funds of defendant, as they were made, were made in the manner requested by the plaintiff city, and such payment was made in the usual manner of such payments theretofore made.

"3. E. M. Fesler was the duly appointed and acting treasurer of Plainville city, and her acts in receiving said fund, as she did receive it, were binding upon the city of Plainville, Kansas.

"4. The plaintiff is estopped to say that said payment, under the facts in this case, was not made in accordance with the law.

"5. The check for $11,166.99 was duly signed by the county treasurer of Rooks county, Kansas, and was duly countersigned by R. E. Southard, county clerk. Such check and remittance, as the evidence shows in this case, was a payment of the amount represented by said check to plaintiff city."

The usual motions were filed and overruled, judgment was entered for defendant, and plaintiff appeals.

The first point advanced by appellant is that the failure of the city treasurer to present the county treasurer's check did not cause any loss in the county. Let us see about that. If it had been presented with reasonable promptness it could have been honored and paid. The negotiable instruments act (R. S. 52-1703), and good business practice as well, required that the check be presented within a reasonable time. Since the city treasurer was assistant cashier of the bank and necessarily knew how close to the line of insolvency the bank was, she should have been zealous to protect the funds of the innocent taxpayers of Plainville who had repeatedly honored her with their suffrages. She knew how great was the hazard of any delay in presenting the county treasurer's check for payment. Why does a city have a treasurer except to protect its finances? Surely it requires no homily on business ethics to show that this

city treasurer had a fundamentally erroneous notion of where her primary loyalty belonged. But for her passive assent to the suggestion that the city funds be sent to the Plainville bank, the county board and the county treasurer could promptly have taken other effective means to withdraw the excess county funds from the bank and to reduce the county deposit to some figure adequately protected by the bank's $1,800 bond. It is idle to suggest that no loss has been sustained by the county. This lawsuit is to decide whether the county or the city shall suffer that loss.

It is contended, however, that the negotiable instruments act does not apply to financial transactions in which the public is interested. The pertinent provision of that act is that where a check is not presented for payment within a reasonable time the drawer will be discharged from liability to the extent of any loss caused by the delay. (R. S. 52-1703.) There is statutory authority for depositing county funds in banks (R. S. 19-530), and statutory direction as to how public funds thus deposited may be paid out—on the county treasurer's check countersigned by the county clerk. (R. S. 19-534.) No sound reason can be suggested why the usual rule governing the reasonably prompt presentation of checks should not apply to the county treasurer's checks. Let us assume for the moment that the ordinary rule should not govern. Then it would necessarily follow that the county treasurer would have to follow every check issued by him on a county depository with an inquiry whether it had been presented and paid, otherwise he would never know what balances he had in the banks. Nothing in the pertinent statutes would justify such a crude and unbusinesslike method of transacting the fiscal affairs of the county. In *School District v. Ottawa County Comm'rs*, 133 Kan. 528, 1 P. 2d 88, it was held that the statutory rule of diligence prescribed by the negotiable instruments act governed the presentation of a county treasurer's check drawn in favor of a school district treasurer. To the same effect was *City of Brunswick v. Peoples Savings Bank*, 194 Mo. App. 360, 362, and in *National City Co. v. Mayor, &c., of Athens*, 38 Ga. App. 491, although in the latter case the city's delay in presenting the check was excused because of the circumstances.

Another point urged in favor of the city is that it was not bound by the misfeasance or nonfeasance of its city treasurer. Quite so. It is to be hoped that the city is adequately protected by her official bond. But where one of two public bodies, the city or the county,

must sustain a loss of public funds, the one whose delinquent official caused the loss must suffer rather than the other whose official was not at fault. The act of the county treasurer in transmitting the sum of taxes collected to the city treasurer by check drawn upon the county depository in Plainville, countersigned by the county clerk, was in strict conformity with statutory requirements and in accord with previous sound business practice between the county treasurer and the city treasurer.

The next point urged on our attention is that the county treasurer's letter of transmittal did not itemize the various separate amounts of city-tax moneys included in his remittance of January 9. The city treasurer sought to excuse her delay in presenting the check for payment because she "had not succeeded in figuring this out satisfactorily and failed to get it in before the close." But the trial court was not bound to believe that excuse. It never was more than an apologetic talking point. And the evidence which the trial court chose to believe justified the finding, quoted above, that she did not refrain for thirteen days from cashing the check because she did not understand what city funds should be credited with the county treasurer's remittance, "but failed to cash said check as a protection to said bank, believing, as she testified, that her allegiance was first to said bank."

Error is also urged against the trial court's findings. In one of these the court found that the Plainville bank held $11,238.33 of the county's funds on January 9, 1928. Appellant contends that the uncontradicted testimony was that the amount of county deposits in the bank on that date was $14,346.99. We do not see that the inaccuracy of this finding, if any, affects the result. It is also contended that certain findings were based on evidence which the trial court struck out on defendant's motion. We do not so read the record. Appellant argues that the seventh finding, set out above, was not based on any evidence and was contrary to the evidence. We think the evidence inherent in the circumstances justified this finding. We have also considered, but do not sustain, defendant's objections to findings 11, 12, 13 and 14.

A more serious question is raised on the trial court's finding No. 10 and the legal consequences to these litigants derivable therefrom. There was not enough actual cash in the Plainville bank to have paid the county treasurer's check for $11,166.99. On January 9, 1928, the day the check was drawn, the cash, including cash items,

in the bank was $6,080.94, and on the day the city treasurer received the check the cash on hand was $6,094.59. At those times, however, the Plainville bank had reserves in Kansas City banks as follows:

| | | |
|---|---|---|
| January 9, in First National Bank | | $7,485.56 |
| January 10, in First National Bank | | 8,523.53 |
| January 9, in Federal Reserve Bank | | 6,488.79 |
| January 10, in Federal Reserve Bank | | 19,535.92 |

The vital question in this connection is whether the bank's Kansas City reserves can be considered in determining whether the Plainville bank had sufficient funds available to pay the county treasurer's check if it had been presented on January 10. Since the city treasurer was assistant cashier, and actually kept her official accounts as treasurer in the bank, including the county treasurer's check itself, a reasonable time would have been forthwith, or, in any event, as soon as the requisite funds to meet it could have been brought in from Kansas City. The trial court took judicial notice that this could have been accomplished within three days. We take judicial notice that it could have been effected by telegraphic request and railway express in less than one full day. No case is cited which holds that a bank with adequate reserves in the hands of its metropolitan correspondents and subject to check or sight draft commits an act of insolvency because it cannot actually hand over the cash at the moment on presentation of a check for an unusual amount when it has adequate reserve cash to pay it as quickly as modern facilities of communication and transportation can be made effective. The banking act and good banking practice contemplate that only a modest percentage of deposits need be kept on hand, and sight exchange reserves in the metropolitan business centers of the country are regarded as cash if they are available without question to satisfy the demands on the bank in due course of business. In view of the cash on hand and the available reserves in Kansas City, the trial court did not err in holding that if the county treasurer's check had been timely presented it could have been paid in full in due course of business.

The other objections to the judgment have been carefully considered, but they would not justify further discussion. No prejudicial error in the record is made to appear, and the judgment is therefore affirmed.

BURCH, J., not sitting.