No. 31,282

School District No. 2 in Ellis County, *Appellant*, v. The Board of County Commissioners of the County of Ellis, and Paul J. Wasinger, County Treasurer of Ellis County, *Appellees.*

(25 P. 2d 578.)

Opinion filed October 7, 1933.

E. C. *Flood,* of Hays, for the appellant.

B. W. *Brooks,* E. J. *Malone,* D. L. *Haney* and A. J. *Wiles,* all of Hays, for the appellees.

The opinion of the court was delivered by

Dawson, J.: This action was an outgrowth of the peculations of a county treasurer in Ellis county.

In 1930-1931 there was a shortage of $45,987.89 in the county treasurer's funds. He was sent to the penitentiary; his personal estate was insolvent, and his official bond was worthless.

In 1930 school district No. 2, of Ellis county, levied taxes for its general revenue and for its interest and sinking funds. These levies were extended on the tax rolls of the county and collected by the defaulting county treasurer. When demand was made on the succeeding county treasurer for these funds they were not forthcoming. The board of county commissioners adopted the theory that each school district, township and city in the county must bear its proportionate share of the loss caused by the defaulting treasurer. A computation showed that of all public moneys which had come into his hands he had made away with 7½ per cent of them. Accordingly the county board adopted a resolution which was spread on the commissioners' journal. It reads:

"The county treasurer is hereby ordered to charge each taxing district in Ellis county, Kansas, a sum equal to the amount that the total taxes levied by said taxing district in 1930, bears to the total amount of the deficit in the funds of P. V. Gottschalk, former treasurer, according to the schedule of the county clerk.

(Signed)     JOHN KRUEGER, *Chairman.*"

To test the validity of this arrangement this action was begun. The facts were developed without material.dispute. The trial court held the arrangement valid. Its most material finding reads:

"4. The order of the county commissioners, directing the present county treasurer to charge back to each taxing district in Ellis county approximately 7½ per cent of the amount levied by such taxing district, is a practical administrative order, which should be followed by the present county treasurer and by the officers of each taxing district of Ellis county, *until some court of competent jurisdiction decides to the contrary.*"

Judgment was entered accordingly, and the school district appeals.

On a broad view of this situation it can readily be seen that the $45,987.89 shortage in the county treasurer's funds must ultimately fall on the taxpayers of Ellis county; and to the individual taxpayer it matters little whether the county at large shall make good this deficit, or whether it must be replaced *pro rata* by the various subordinate taxing agencies of Ellis county vested with power to impose tax levies upon his property. In a practical way, however, it is important that the correct method of dealing with this sort of affairs should be authoritatively determined, since defalcations of public funds do occasionally happen; and whatever "administrative order" is made in Ellis county must be one suitable of uniform operation throughout the state.

While the statutes may be searched in vain for specific direction as to how to deal with a situation of this sort, a good start to show that the problem is wholly one for the county to face, and not of direct concern to its smaller taxing units, may be discovered in the fact that the board of county commissioners did deal with it as one engaging its official concern. The board is the managerial tribunal for handling the county's affairs. (R. S. 19-212.) It has nothing to do with the affairs of the smaller taxing units except where specific statutory authority has been conferred. The county treasurer is a county officer, chosen by the electors of the county. The unanimous veto of every voter in school district No. 2 would not impair his title to the office. The county board fixes the amount of his bond, and determines its sufficiency. On that point neither

school district No. 2 nor any other subordinate taxing unit of the county has any say-so. The county board supervises and approves the county treasurer's accounts, and employs auditors to verify them. The plaintiff school district has nothing to do with these matters. The county board selects the banks in which the funds in the county treasurer's hands shall be deposited. (R. S. 19-530.) If the unanimous opinion of the officers and citizens of school district No. 2 was that those county depositories were financially infirm it would not affect the power and authority of the county board over these depositories. On a proper showing, the county board may suspend or remove the county treasurer for fiscal irregularities where the public interest requires it. (R. S. 19-523.) The moneys in the hands of the county treasurer are public funds. While they are subject to apportionment and segregation to the state, to the county, and to the cities, townships and school districts, and occasionally to drainage districts and the like, until that apportionment and segregation are made those moneys *en masse* are public funds for which the county is responsible. If they are embezzled by a derelict county officer, or lost in a bankrupt county depository, or stolen by a burglar from the vaults of the county treasury, or taken by a robber at the point of a gun during office hours, it would seem that the resultant loss must fall on the county at large. Certain it is that the loss cannot be apportioned by "administrative order" among the subordinate taxing districts of the county. If such an order should be made in the present instance, it would have to be made if the treasurer's peculations or other losses were for $500 or $5. This line of argument could be greatly extended, but it is needless. This court holds that the administrative order prorating the loss caused by the defaulting county treasurer among the taxing districts of the county was neither authorized by statute nor can the statutory powers conferred on the county board be extended by implication to sanction the order relied on as a defense to the lawful demand of the plaintiff school district.

The judgment is reversed, with instructions to enter judgment for plaintiff.