No. 31,651

THE STATE OF KANSAS, ex rel. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF CRAWFORD, *Appellant,* v. CRAWFORD TOWNSHIP IN CRAWFORD COUNTY, SCHOOL DISTRICT NO. 3 IN CRAWFORD COUNTY et al., *Appellees.*

(32 P. 2d 809.)

Opinion filed May 5, 1934.

*Robert S. Lemon,* county attorney, and *T. J. Karr,* assistant county attorney, for the appellant.

*E. E. Haney* and *George F. Beezley,* both of Girard, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action by the board of county commissioners of Crawford county, Kansas, against one township, two cities, thirty-four school districts and three joint school districts in Crawford county, for a declaratory judgment and decree directing the county treasurer to charge against the moneys in his hands as county treasurer belonging to the respective defendants their share of the money lost by the failure of the Pittsburg State Bank, in accordance with the provisions of chapter 164 of the Laws of 1933.

One township and nine school districts filed demurrers to the petition; the other defendants are in default. The trial court sustained the demurrers, and plaintiff board of county commissioners appeals.

The bank closed its doors February 24, 1927. The final dividend was paid in October, 1931, when the county treasurer's fund therein was reduced to $15,269.80. During this time of liquidation and until this action was commenced on April 29, 1933, the county treasurer and his predecessors continued to pay to the several defendants herein the full amounts collected and distributed to them, regardless of the loss sustained by the bank failure.

The act directs the county treasurer to prepare a list showing the distributed amounts due from the county to each taxing district, as shown by his record on the day the bank closed, disregarding all funds overdrawn on that day, all undistributed funds and also those funds for which no levy was made for the current year, and on a percentage basis he was to prorate the amount to be charged back to these taxing districts not included in the three exceptions. Before these ascertained amounts shall be charged back the statute requires that a declaratory judgment be rendered, and thereafter the county treasurer shall deduct such amounts from the respective taxing districts' funds in his hands belonging to such dis-

tricts when he makes his next annual settlement with such taxing districts.

The matter of charging back to the funds of the district in the hands of the county treasurer presents the most serious question here involved. It is apparently applying these funds to an object different than that for which they were levied and collected.

The defendants in support of their demurrers urge that this act violates section 4 of article 11 of the constitution, which provides that "No tax shall be levied except in pursuance of a law, which shall distinctly state the object of the same; to which object only such tax shall be applied," and also that it is retrospective in its application and, therefore, the vested rights of the defendants are invaded and infringed. The title to the act refers "to funds of all counties in banks which are in charge of the state bank commissioner, United States comptroller of currency or a receiver." The first section of the act says it shall apply to funds "which shall have been deposited in any bank or banks by any county treasurer," and the third section of the act requires the county treasurer to make such list and charge back to such taxing districts within sixty days after the taking effect of the act or within sixty days after receiving the final dividend, if such dividend has not been received at the time this act takes effect.

The act took effect March 27, 1933. Appellant urges that the act applies to future failures of county depositaries as well as those failing prior to the passage of the act, and that when the levies are made and the taxes are paid the general knowledge of this provision of the law makes the funds collected properly subject to this provision of being charged back to cover such a loss. But how it may apply to the future is not now before us. This is distinctively a past transaction as far as the bank failure is concerned, and the question is, Can this act of 1933 properly direct the county treasurer to charge back to the funds of the taxing district now in his hands to the credit of the district, to cover a prorated share of the loss sustained by a bank failure in 1927? Was that the object for which these taxes now in his hands belonging to these defendants were levied and collected?

This new law was doubtless intended to meet the situation so plainly outlined in the case of *School District v. Ellis County Comm'rs*, 138 Kan. 274, 25 P. 2d 578, where the board of county commissioners apportioned the loss occasioned by the embezzlement

of the county treasurer, and it was held that such loss of public funds must fall on the county at large, and that there was no authority by statute nor by implication thereof to sanction an adjustment of the county loss by apportioning it among the taxing districts. It has been regularly held that the county is responsible for the safe-keeping of the funds collected by the county treasurer while they are still in his hands or in the depository selected by the board of county commissioners, and any loss thereof is a county loss.

The case of *Myers v. Kiowa County,* 60 Kan. 189, 56 Pac. 11, was where the county board. sued on the bond of a county depositary, and the defense was that part of the funds deposited in the bank by the county treasurer belonged to townships and other municipalities, and it was held that—

"These funds in the treasurer's hands, the proceeds of other than county taxes, must, in our judgment, be regarded as belonging to the county until they are actually paid over to the state, municipality or person for whom they were collected. The county is responsible for their safe-keeping, and if it is not the absolute owner it holds as trustee for the benefit of the real owners." (p. 193.)

In the case of *School District v. Ottawa County Comm'rs,* 133 Kan. 528, 2 P. 2d 88, it was said:

"There is no question but that the county is responsible for the safe-keeping of the school-district funds until they are actually paid over to the district, as was said in the case of *Myers v. Kiowa County,* 60 Kan. 189, 56 Pac. 11. The same principle was emphasized in the case of *School District v. Roanoke State Bank,* 126 Kan. 122, 267 Pac. 35 . . ." (p. 536.)

In the very recent Ellis county case, *supra,* it was held:

"The moneys in the hands of the county treasurer are public funds. While they are subject to apportionment and segregation to the state, to the county, and to the cities, townships and school districts, and occasionally to drainage districts and the like, until that apportionment and segregation are made those moneys *en masse* are public funds for which the county is responsible. If they are embezzled by a derelict county officer, or lost in a bankrupt county depository, or stolen by a burglar from the vaults of the county treasurer, or taken by a robber at the point of a gun during office hours, it would seem that the resultant loss must fall on the county at large. Certain it is that the loss cannot be apportioned by 'administrative order' among the subordinate taxing districts of the county." (p. 276.)

The legislature could change the responsibility and obligation of safely caring for the taxes that have been collected, as was said in *City of Winfield v. Court of Industrial Relations,* 111 Kan. 580, 207 Pac. 813:

"The state creates governmental officers and agencies, clothes them with authority, alters that authority, resumes it and imposes it on other functionaries as experience may suggest." (p. 583.)

This new act of 1933 nowhere undertakes to relieve the county of this responsibility or obligation imposed, partly, at least, by R. S. 19-530 and the amendment thereof, R. S. 1933 Supp. 19-530, authorizing the board of county commissioners to select a depository for the funds coming into the hands of the county treasurer, but it seeks to give the county the right to reimburse itself for the funds lost in the closed bank by charging back to the taxing districts a prorated share of such loss and taking them out of this year's collections in the hands of the county treasurer for the loss sustained many years ago.

The new cash-basis law (Laws 1933, ch. 319) provides for the issuance of bonds by the taxing district to make good an indebtedness to the county or other parties without disturbing funds levied and collected for another purpose. R. S. 72-1031 provides for levying a tax for the collection of a judgment that may have been obtained against a school district.

In the very recent case of *Nemaha County Comm'rs v. City of Seneca,* 138 Kan. 895, 28 P. 2d 1034, an action for a prorated claim was prosecuted by the county against a city for its share of a loss sustained by the county having to return a tax paid under protest, after the county treasurer had distributed the tax to the taxing districts, and the claim of the county was allowed as far as that feature was concerned, but with the distinct statement that no question as to the validity of the levy or the authority of the county to maintain such an action was raised.

On the question of the right to divert the funds collected from the object for which they were levied and collected, it was held in the case of *National Bank v. Barber,* 24 Kan. 534:

"This general county tax was levied for 'county purposes,' for 'county charges and expenses,' for 'current expenses of the county,' and no portion of it was levied for the purpose of paying principal or interest on township railroad bonds. And it was levied for said 'county purposes' 'in pursuance of a law,' and therefore no portion of it can now be diverted from such purpose or purposes. Const. art. 11, § 4; *State v. Comm'rs of Marion Co.,* 21 Kan. 419." (p. 545.)

In the case of *State v. City of Emporia,* 57 Kan. 710, 47 Pac. 833, it was held:

"The transfer of the building fund derived from the levy to the general fund, with or without a vote of the electors, would be a direct violation of section 4, article 11, of the state constitution, which provides that 'no tax shall be levied except in pursuance of a law, which shall distinctly state the object of the same; to which object only such tax shall be applied.' . . . No reason is seen why funds derived from municipal taxation are not protected, to the same extent as any other, by the constitutional limitation prohibiting the application of such funds to purposes other than those for which they were levied." (pp. 712, 713.)

In the case of *State, ex rel., v. Saline County Comm'rs*, 128 Kan. 437, 278 Pac. 54, section 1 of chapter 229 of the Laws of 1929 was considered and held to be in violation of section 4 of article 11 of the constitution. The section provided for the loan by the board of county commissioners of a county to the state highway commission of various county funds to be used in the construction of state highways in the county and for the repayment of the same as funds may be available. In the opinion, after referring to the constitutional provision, it was said:

"This restriction is an insuperable barrier to the loaning of the funds named or to their application to the building of state highways. The taxes were levied in pursuance of law for specific purposes, and the funds derived from these levies must be exclusively applied to those purposes. Each of the funds is distinct from the others and it is beyond the power of the commissioners or others to divert funds raised by taxation for one purpose and apply them to another. It would be a violation of the constitution to apply the bond fund to the building of county roads or to apply the sinking fund to the building of county bridges. No more can the funds raised for each of the specific purposes mentioned be loaned to the state highway commission or applied to the building of state highways." (p. 440. See, also, *City of Frankfort v. Warders*, 119 Kan. 652, 240 Pac. 589; and *Smith v. Haney*, 73 Kan. 506, 85 Pac. 550.)

We must conclude that the proposed charging back of the funds of the various taxing districts to reimburse the county for the prorated shares of the taxing district funds lost in a closed bank many years ago is a diversion of such funds and is in violation of the restriction of section 4, article 11, of the state constitution, and that the demurrers of the defendants to the plaintiff's petition were properly sustained.

The judgment is affirmed.