No. 25,570.

THE KAW VALLEY DRAINAGE DISTRICT OF WYANDOTTE ·COUNTY, *Appellant,* v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF WYANDOTTE, *Appellee.*

SYLLABUS BY THE COURT.

1. DRAINAGE DISTRICT—*Action Against County for Services Rendered in Removing Bridge Approach—Services Proprietary and Not Governmental—Statute of Limitations.* In an action by a drainage district against a county to recover the fair and reasonable value of services rendered in removing the approach to one of the county's bridges, *held,* under the circumstances related in the opinion, the services performed were proprietary in their nature rather than governmental, and also *held,* that a claim for such services is barred by the provisions of section 19-308 of the Revised Statutes, unless filed within two years from the time it accrued.

2. SAME—*Power of County to Contract for Removal of Approach to Bridge Over Navigable Stream—Plans and Specifications Required.* A county is without power to make a valid contract for the removal of an approach to one of its bridges over·a navigable stream without first complying with the requirements of section 68-1402 of the Revised Statutes, which provides, among other things, for the preparation of plans and specifications, estimate of cost, under oath, and advertisement for bids.

Appeal from Wyandotte district court, division No. 2; FRANK D. HUTCHINGS, judge. Opinion filed February 7, 1925. Affirmed.

*Thomas A. Pollock,* of Kansas City, for the appellant.

*J. H. Brady,* county counselor, and *T. F. Railsback,* of Kansas City, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one by the drainage district to recover the expense of removing certain approaches to what is known as the James street bridge. The plaintiff's petition was in two counts. A demurrer was sustained to the second count, and plaintiff appeals.

The facts are substantially as follows: The public bridge of Wyandotte county across the Kansas river at James street, in Kan-

sas City, Kan., prior to 1912, consisted of but two spans with an embankment constituting an approach at the easterly end of the bridge. The improvement of the channel for flood protection necessitated the removal of the approach. In 1911 the drainage district ordered its removal. The county failed to remove it, but by order of the drainage district reconstructed the bridge. Under an alleged agreement between the drainage district and the county, the drainage district removed the approach, consisting of approximately 29,750 cubic yards of dirt. The work was completed October 9, 1913. A controversy arose as to compensation due the drainage district from the county for removal of the approach, and in September, 1917, the drainage district brought action against the county for $5,553. Later an amendment was made to plaintiff's petition reducing the amount claimed under the contract to $4,000. Still later, on January 23, 1922, the plaintiff filed an amended petition in two counts. In the second count it was alleged that the approach had been removed at a cost of $23,244, and claim made for that amount. The trial court sustained a demurrer to this count of the petition on the ground that the plaintiff had not presented its claim within two years after it accrued.

The plaintiff contends that the statute requiring claims against a county to be filed in two years is not applicable, because the plaintiff is a public corporation suing solely as the agent and for the benefit of the state in the performance of a purely governmental function. It also claims that the funds which it used in 1912 to remove the embankment were public funds which it held in trust by virtue of a vote of the taxpayers of the district for the construction of other and different improvements, and that, having used such trust funds for the benefit of the county, they may be recovered. On the other hand, the defendants contend that the claim was not, in its nature, a public demand or a right affecting the general public, but was purely a private and proprietary right which was subject to the general limitation laws. The statute reads:

"No account against the county shall be allowed unless presented within two years after the same accrued: *Provided,* That if any person having a claim against the county be at the time the same accrues under any legal disability, every such person shall be entitled to present the same within one year after such disability shall be removed." (R. S. 19-308.)

The plaintiff well argues that the drainage district is an incorporated agency of the state; that, while it acts, by direction of

the state, in its own name, it acts for the state and for the benefit of the public, generally, and, indirectly, at least, for the benefit of the people of the whole state, and the fact that in this action the drainage district uses its name as plaintiff made no difference; that the situation is exactly the same so far as statutes of limitation are concerned, as though the case had been prosecuted in the name of the state; that the drainage district exercises for the state a part of its police power to promote the general welfare, and that the construcion and reconstruction of the bridges and approaches thereto and the clearing of the channel of a navigable river to secure flood protection is a governmental duty or function, citing various authorities, among which are, *Roby v. Drainage District*, 77 Kan. 754, 760, 95 Pac. 399; *Shawnee County v. Jacobs*, 79 Kan. 76, 99 Pac. 817; *Drainage District v. Railway Co.*, 87 Kan. 272, 123 Pac. 991; *Anderson v. Cloud County*, 90 Kan. 15, 132 Pac. 996; *Thomas v. Ellis County*, 91 Kan. 443, 138 Pac. 409; *Jefferson County v. Drainage District*, 97 Kan. 302, 155 Pac. 54; *Todd v. Drainage District*, 109 Kan. 754, 201 Pac. 1096; *Sherwood v. Worth County Drainage District No. 1*, 250 S. W. 605; 25 Cyc. 194.

We concur in the general principle for which the plaintiff contends, but are of opinion that when the drainage district rendered services to another municipal organization (the county), it went beyond its purely governmental duty. It was within the power of the drainage district to compel the county, by mandamus, or otherwise, to remove the approach (R. S. 24-407), but when the drainage district entered upon the business of performing services for the county, it undertook to perform a function that was proprietary rather than governmental, and it was bound to file its claim within the time prescribed by the statute.

In I Wood on Limitations, 4th ed. 167, it is said:

"Statutes of limitation do not run against the state in respect of public rights unless the state is expressly included within the terms of the statutes, but where the state becomes a partner with individuals or engages in business it divests itself of its sovereign character and is subject to the statute."

A similar question was well considered in *Osawatomie v. Miami County*, 78 Kan. 270, 96 Pac. 670. In the opinion it was said:

"A very satisfactory expression of the rule is found in *Simplot v. Chicago, M. & St. P. Ry. Co.*, 16 Fed. 350, 5 McCrary, 158, in these words: 'The true rule is that when a municipal corporation seeks to enforce a contract right, or some right belonging to it in a proprietary sense, or, in other words, when the corporation is seeking to enforce the private rights belonging to it, as

distinguished from rights belonging to the public, then it may be defeated by force of the statute of limitations; but in all cases wherein the corporation represents the public at large or the state, or is seeking to enforce a right pertaining to sovereignty, then the statute of limitations, as such, can not be made applicable. In the latter cases, the courts may apply the doctrine or principle of an estoppel, and by means thereof, where justice and right demand it, prevent wrong and injury from being done to private rights.' (p. 361.) A summary of the doctrine discussed is thus stated by the author of the note referred to [101 Am. St. Rep. 144]: 'Theoretically, the rule that statutes of limitation do not run against governmental bodies when asserting a public right or protecting property held for public use, and that such statutes do run against such bodies when asserting private rights or enforcing rights arising from out of ordinary business transactions, is sound. The rule is supported by the weight of authority, although there are some cases which seem to hold that the pecuniary interests of the United States are matters of sovereignty. The difficulty of any rule in regard to the subject lies in its application to the varied circumstances of each particular case. There are, of course, many circumstances under which it would be readily conceded that the governmental body is acting strictly in a sovereign capacity, but, on the other hand, there are many other circumstances when it seems to us that it is extremely doubtful whether the governmental body is acting in a strictly sovereign capacity in attempting to enforce alleged property rights.'" (p. 273.)

The defendant was obligated by the law to remove the approach, and doubtless, had the plaintiff taken proper steps at the time, it could have compelled it so to do. The plaintiff, having removed the approach for the defendant, would have been entitled to recover the actual and reasonable expense for so doing had it followed the requirements of the statute and filed its claim within the time specified by the statute. (See *Davis County v. Riley County,* 9 Kan. 635.) While the record is not entirely clear that the plaintiff failed to file its claim within the two years, we understand that to be the fact.

The allegations of the first count of the petition are made a part of the second count. In the first count it was alleged that the drainage district entered into a contract with the defendant whereby it was agreed that the plaintiff should remove the approach for $4,000.

It is contended by the defendant that the alleged contract between the parties set out in plaintiff's petition was of no effect because certain positive, express and mandatory requirements of the statute to be pursued by the county had not been complied with. We concur in that view. The arrangement by which the plaintiff claims to have done the work is pleaded in its petition. The minutes of the board of county commissioners, including its resolutions, are

shown, from which it appears that no plans and specifications were prepared, no estimate of the cost under oath, no advertisement for bids, no letting to the lowest and most responsible bidder, and no bond for the proper performance of the contract, all of which elements are required by the statute. ( R. S. 68-1402.) The county was without power to make the contract without following the antecedent requirements of the statute, and is not liable under the contract.

The judgment is affirmed.