### No. 33,674

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SHAWNEE, *Appellee* and *Cross-appellant,* v. JOHN M. WRIGHT, County Treasurer of Shawnee County, *Defendant;* and THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SALINE et al., *Appellants;* THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF RICE, *Cross-appellee.*

(78 P. 2d 44)

Opinion filed April 9, 1938.

*L. W. Rosenkranz,* of Washington, *Harold R. Fatzer,* of Kinsley, *Herbert Deits,* of Great Bend, *David Ritchie, C. L. Clark,* both of Salina, *U. S. Weary,* of Junction City, *John H. Lehman,* of Abilene, *George R. Lehmberg, Archie T. MacDonald,* both of McPherson, *E. W. Stuewe,* of Alma, *Russell Strobel,* of Larned, *Alfred Williams,* of Pratt, *Wesley E. Brown, J. Richards Hunter* and *Gerald C. Stover,* all of Hutchinson, for the appellants.

*Paul L. Harvey, Walter T. Chaney* and *Jacob A. Dickinson,* all of Topeka, for the appellee and cross-appellant.

*Edward Wahl,* of Lyons, for cross-appellee Board of County Commissioners of Rice county.

The opinion of the court was delivered by

HUTCHISON, J.: The board of county commissioners of Shawnee county brought this action to enjoin and restrain the county treasurer of Shawnee county from complying with an order of the state tax commission directing him to redistribute a part of a certain mortgage registration fee apportioned and paid to Shawnee county, and also to enjoin and restrain thirty-four boards of county commissioners from instituting or prosecuting any proceeding against the plaintiff board or any of the officers of Shawnee county to enforce compliance with the order of the state tax commission. A copy of the order of the state tax commission was attached to the petition as an exhibit.

Thirty-three of the thirty-four defendant boards of county commissioners filed demurrers to the petition on two grounds: first, that the district court of Shawnee county had no jurisdiction of the subject of the action, viz., to hear and review an administrative order of the state tax commission; and second, that the petition did not state facts sufficient to constitute a cause of action. These demurrers were overruled by the trial court, and from that order the thirty-three boards appeal.

The board of county commissioners of Rice county filed a motion to quash the service of summons for the reason that the district court of Shawnee county did not have jurisdiction of the defendant Rice county board and that it could not be sued properly in Shawnee county. This motion was sustained by the trial court, and from that ruling the plaintiff appeals as cross-appellant.

The Kansas Power and Light Company gave a mortgage to the Harris Trust and Savings Bank, trustee, to secure an indebtedness of $30,000,000 covering property both real and personal situated in several counties of this state, and when presented to the register of

deeds of Shawnee county for registration there was paid to the register of deeds of Shawnee county a mortgage registration fee of $75,000, which fee was duly paid over to the county treasurer of Shawnee county, who apportioned and distributed it to the various counties wherein the real estate covered by the mortgage was situated in accordance with the proportionate assessed value of the real property contained in the mortgage as situated in the several counties, which apportionment gave Shawnee county $34,895.25, which was paid by the county treasurer into the general fund of Shawnee county. Five of the defendant counties filed application with·the state tax commission for a determination as to the proper distribution of the mortgage registration fee.

The first point raised by the demurrers to the petition of the plaintiff is that the district court of Shawnee county had no jurisdiction to hear and review an administrative order of the state tax commission. The mortgage registration tax law is outlined and prescribed in article 31 of chapter 79 of the General Statutes of 1935, the first five sections being the ones particularly applicable to the controversy here involved. The last sentence of G. S. 1935, 79-3105, indicates that the finding and order of the state tax commission is final and conclusive, it being as follows:

"Should any contention arise as to the division and distribution of such registration fees, the same shall be referred to the state tax commission, who are hereby authorized and directed to decide the same, which decision shall be final."

Before the passage of the mortgage registration tax law in 1925 it had already been said in a mandamus action brought by an aggrieved taxpayer against a board of county commissioners to compel compliance with an order of the tax commission that—

"The tax commission is an administrative body, and its decisions in all matters within the scope of its supervisory power, involving administrative judgment and discretion, are conclusive upon subordinate taxing officials. In the exercise of its functions, the tax commission must as a matter of necessity interpret the tax laws, and such interpretations are prima facie binding." (*Robinson v. Jones*, 119 Kan. 609, 612, 240 Pac. 957.)

It was also held in the second paragraph of the syllabus in that case that in such an action the county board "may defend on the ground the order was erroneous as a matter of law."

In the case of *Chicago, R. I. & P. Rly. Co. v. Ford County Comm'rs*, 138 Kan. 516, 27 P. 2d 229, it was held:

"While the state tax commission has supervisory and controlling power over subordinate taxing officers, the power exercised is administrative, not judicial, and its decision ordering the county to issue a refunding warrant to a taxpayer who had paid an alleged illegal tax under a protest is not conclusive on the courts on questions of law nor does it prevent the court from rendering a proper judgment on the issues involved in the order." (Syl. ¶ 1.)

The case of *State, ex rel., v. Davis,* 144 Kan. 708, 62 P. 2d 893, was an injunction action, and it was there held:

"An order of the state tax commission that certain property be taken from the assessment roll as exempt may be reviewed in an action brought by the state on the relation of the county attorney." (Syl.)

In the opinion it was said that apparently the sole question before the tax commission was whether specific property was exempt from taxation under the constitution and laws of the state because of the use that was being made of it and that—

"This necessarily involved the interpretation of the pertinent provisions of our constitution and statutes and their application to the facts agreed upon as shown by the evidence. This is a purely judicial function as distinct from a legislative or administrative one." (p. 710.)

There can be no question as to the jurisdiction of the trial court in this injunction case if the matter brought before it for consideration involved the interpretation of a law applied and construed by the tax commission. The tax commission regarded the question before it as an interpretation of the mortgage registration tax law as shown by the statement of the matter before it for consideration in the order made by it. After reciting some of the facts of the case before it the order continued with the following sentences:

"These complaining counties claim that the said treasurer, in making such distribution, misinterpreted the statute, and did not distribute to several of the counties interested their proportion of said fee. Shawnee county claims that it did distribute to each of the other counties their proper proportion of said fee. Shawnee county claims that the tax should be distributed in proportion to the assessed value of real estate as 'real estate' is usually defined. Its contention is that the assessed value of property, usually spoken of as personal property, such as right-of-way, easements, poles, lines, viaducts, pipes, meters, and all similar property, should not be taken into consideration in making this distribution. . . .

"The applicants, on the contrary, claim that the mortgage tax should be distributed according to the assessed value of all property described in the mortgage. This seems to present the question that this commission must decide."

After citing and considering the sections of the statute involved, the order of the commission concludes as follows:

"It is the opinion of this commission that this definition of real estate is broad enough, for the purposes of the mortgage registration law, to embrace all property covered by this mortgage. It follows, therefore, that we must find that the mortgage registration fee so paid to the county treasurer of Shawnee county should be apportioned among the counties in which some part of the mortgaged property is located, in proportion to the assessed valuation of said property in the respective counties."

The commission then applies this interpretation to each of the thirty-five counties, including the plaintiff, by setting opposite the name of each county the amount of the $75,000 mortgage registration tax that should be distributed to each, basing the distribution, as stated in the order, upon "all property covered by this mortgage."

We have no hesitancy in concluding that the trial court had jurisdiction of the subject matter of this action which involved an interpretation of the mortgage registration tax law.

The following is the definition of real estate as given in the first part of G. S. 1935, 79-3101:

"The words 'real property' and 'real estate' as used in this act, in addition to the definition thereof contained in the Revised Statutes of 1923, shall include all property a conveyance or mortgage of which is entitled to record as real property or interest therein under the laws of this state. The words 'mortgage of real property' shall include every instrument by which a lien is created or imposed upon real property, notwithstanding that the debt secured thereby may also be secured by a lien upon personal property."

G. S. 1935, 79-3102, is in part as follows:

"Before any mortgage of real property, or renewal or extension of the same shall be received and filed for record on and after the first day of March, 1925, there shall be paid to the register of deeds of the county in which such property or any part thereof is situated, a registration fee for each one hundred dollars and major fraction thereof, of the principal debt or obligation which is secured by such mortgage, the sum of 25 cents; . . . *Provided further,* That after the payment of the registration fees as aforesaid the mortgage and the note thereby secured shall not otherwise be taxable."

G. S. 1935, 79-3103, has reference to taxes on mortgages recorded prior to the enactment of the law. G. S. 1935, 79-3104, has reference to entries to be made concerning the registration tax and the payment of the same to the county treasurer, who shall keep an account of the same and shall credit it to the county general fund. G. S. 1935, 79-3105, has reference to cases where the mortgage covers property situated in two or more counties and requires that—

". . . the county treasurer so receiving such fee shall apportion the same among the counties in which the real property is situated, in proportion to its assessed valuation, and promptly pay over such proportionate amounts to the respective county treasurers."

The first section just above quoted referred to other definitions of real estate in the Revised Statutes of 1923. The following are three of them:

"The word 'land,' and the phrases 'real estate' and 'real property,' include lands, tenements and hereditaments, and all rights thereto and interest therein, equitable as well as legal." (R. S. 77-201, sub-div. 8.)

"That the terms 'real property,' 'real estate,' and 'land,' when used in this act, except as otherwise specifically provided, shall include not only the land itself, but all buildings, fixtures, improvements, mines, minerals, quarries, mineral springs and wells, rights and privileges appertaining thereto." (R. S. 79-102.)

"That all fixed mains, flumes, aqueducts, reservoirs, receptacles, standpipes, purifiers, regulators, lamps, lampposts, meters, shackle-rods, plugs, tanks, wires and all other property, whether herein enumerated or not, used as part of a system and employed in leading, conducting or distributing heat, light, power, oil, gas, water or other commodity between the place of generation, production or supply and the place of distribution, consumption, use, manufacture, market, or further shipment shall be listed and taxed by the city, town, school district, township or county in which said property or any part thereof is located, and in the same manner returned as is provided by law for real estate." (R. S. 79-422.)

Under these sections there can be no question but that some of these items usually spoken of as personal property, such as rights of way, easements, poles, lines, viaducts, pipes, meters and other similar property, should be considered as real property under the requirements of this mortgage-registration tax law as well as under other laws concerning the taxing of property of public utilities and under the general definition of real property, including "all rights thereto and interests therein, equitable as well as legal," for the purpose of distribution of this mortgage-registration tax. The tax commission stated the question involved, in line with this broad meaning of real property, so as to embrace and include such special property, but in its conclusion the commission did not so limit it but held it "to embrace all property covered by this mortgage." The record shows the mortgage included personal property which did not come under any of these definitions and was not to be assessed as real property. To that extent the commission went beyond the real interpretation of these taxing statutes. The interpretation we have here given these statutes is within the admonition of *Clark v. Murray,* 141 Kan. 533, 41 P. 2d 1042, as being so construed as to sustain all the statutes rather than ignore or defeat any of them. If the conclusion of the tax commission had limited the

apportionment or the distribution of the tax to the assessed value of the real estate and the other property in each county, which the statutes directed to be assessed as real estate, we think that would have been the correct interpretation of these laws, but when it embraced in addition thereto all property covered by the mortgage, which included personal property, it went too far, and to that extent, at least, the petition stated a good cause of action and the demurrers were properly overruled.

Only these two matters were involved in the ruling on the demurrers, but other matters were ably argued which we do not think were directly concerned by the attack upon the petition by the demurrer. It might be said as to the allegation of estoppel by the several county treasurers accepting the distribution apportioned to their several counties by the county treasurer of Shawnee county, that the acts of a county treasurer in that regard will not generally bind the county even by a promise or agreement because he does not represent the county for such purposes. It was held in *Sedgwick County Comm'rs v. Conners*, 121 Kan. 105, 245 Pac. 1030, that—

"In a county's capacity as a governmental agency to collect and conserve the public revenues, estoppel based upon unauthorized acts of its officials cannot be successfully invoked against the county." (Syl. ¶ 3.)

It may be said further as to those counties filing demurrers that such is a general appearance as to the matters alleged in the petition when the demurrers were filed. We shall pass the other matters argued and briefed as not being involved necessarily in the two law points raised by the demurrer, and some of them may possibly become issues of fact.

As to the motion to quash the service of summons on Rice county, which was sustained by the trial court, there is ample authority in support of such ruling. Among such decisions are *Rome Mfg. Co. v. State Highway Comm.*, 141 Kan. 385, 41 P. 2d 761, and *Trader v. Southwestern Bell Telephone Co.*, 145 Kan. 690, 66 P. 2d 414. The former was an action against the state highway commission with service on a section man in Sedgwick county, and it was held:

"The state highway commission is not a corporation in the sense that would authorize the service of summons upon one of its employees under R. S. 60-2518." (Syl. ¶ 2.)

In the latter case service was attempted upon a city outside the county where the action was pending, and in the opinion it was said:

"... that an action against a municipal corporation, by reason of its status, is essentially local in character, and that to permit it to be sued in a county other than where it is situated, would be contrary to public policy and should not be permitted." (p. 694.)

The rulings of the trial court are affirmed both as to overruling the demurrers and sustaining the motion to quash the service on Rice county.

HARVEY, J., not sitting.