No. 34,682

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SHAWNEE, *Appellant,* v. JOHN M. WRIGHT (R. T. FADELY, Substituted), County Treasurer of Shawnee County, *Defendant,* THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF BARBER et al., *Appellees* and *Cross-appellants.*

(109 P. 2d 184)

Opinion filed January 25, 1941.

*Paul L. Harvey,* county attorney, *Walter T. Chaney* and *Jacob A. Dickinson,* both of Topeka, for the appellant.

*C. L. Clark, David Ritchie,* both of Salina, *U. S. Weary,* of Junction City, *Herbert Diets,* of Great Bend, *James Lester, James F. Swoyer,* both of Oska-

loosa, *E. W. Stuewe,* of Alma, *L. W. Rosenkranz,* of Washington, *John H. Lehman,* of Abilene, *F. D. Boyce,* of Minneapolis, *Harold R. Fatzer,* of Kinsley, and *Arthur T. Symns,* of Hutchinson, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action to enjoin the enforcement of an order of the state tax commission. The trial court denied the relief sought by the plaintiff and allowed the defendants a portion only of the affirmative relief asked by them in cross petitions. Both sides appeal.

After setting out the official position of the parties, the petition alleged that on November 2, 1935, the Kansas Power & Light Company paid to the register of deeds of Shawnee county $75,000 registration fee on a mortgage it had filed in Shawnee county that day; that the mortgage covered both real and personal property in various counties of the state and the county treasurer distributed this fee among the various counties where the real property covered by the mortgage was situated, in accordance with the proportionate assessed value of the real property located in each county, so that $34,895.25 was apportioned to Shawnee county and paid into the general fund of that county; that thereafter defendants, Barton, Edwards, Pawnee, Pratt and Morris counties, asked the state tax commission to determine a proper distribution, claiming that the one made by the county treasurer had not been made in compliance with the statute, G. S. 1935, 79-3105; that thereafter the commission issued its order on August 7, 1936, apportioning this fee. A copy of this order was attached to the petition. The petition also alleged that this order showed on its face that the sole question presented to the commission was a legal interpretation of G. S. 1935, 79-3105, and that the order was a violation of section 1, article 3, of the constitution, for the reason that the interpretation of statutes is exclusively a judicial function; that the order was made without evidence to support it; was *ultra vires* and void and if permitted to stand would deprive plaintiff of its property without due process of law; was made without jurisdiction, notice or hearing; that the defendant counties had consented to the apportionment as made by the county treasurer and were estopped from questioning it; that relying on this acceptance plaintiff had commingled its share of the fee with its other funds and had entered it upon its books as a basis for computation of its budget; that plaintiff had no other adequate remedy

at law and its officers were threatened with a multiplicity of suits, and the rights of all parties claiming an interest in that portion of the fee distributed to Shawnee county should be adjudicated in the action; that the order of the tax commission was arbitrary, capricious and unreasonable, deprived plaintiff of its property without due process of law. The petition prayed that the treasurer of Shawnee county be enjoined from complying with the order in so far as it directed the refunding of any part of the $34,895.25, and that all the defendant boards of commissioners be enjoined from prosecuting any proceeding against any of the officers of Shawnee county.

The order of the tax commission, which was attached to the petition, set out that Barton, Edwards, Pawnee, Pratt and Morris counties had filed an application asking for a redistribution; that Shawnee county claimed that the tax should be distributed in proportion to the assessed value of real estate, as real estate is usually defined, and that the assessed value of property usually spoken of as personal property, such as rights of way, easements, poles, lines, viaducts, pipes, meters and all similar property should not be taken into consideration in making this distribution; while the counties named claimed that the mortgage tax should be distributed according to the assessed value of all the property described in the mortgage. The order recited the definition of real estate set out in the mortgage registration act, being part of G. S. 1935, 79-3101, as follows:

"The words 'real property' and 'real estate' as used in this act, in addition to the definition thereof contained in the Revised Statutes of 1923, shall include all property a conveyance or mortgage of which is entitled to record as real property or interest therein under the laws of this state. The words 'mortgage of real property' shall include every instrument by which a lien is created or imposed upon real property, notwithstanding that the debt secured thereby may also be secured by a lien upon personal property."

The order also stated that the above definition was broad enough for the purposes of the mortgage registration law to embrace all property covered by the mortgage.

A table was attached to the order showing the valuation of each interested county, the amount of this tax due as determined by the commission, the amount distributed by the treasurer of Shawnee county to the various interested counties, the remainder to be distributed by the treasurer of Shawnee county and the amount to be refunded to the treasurer of Shawnee county by the counties receiving an overdistribution. It is disclosed by this order that Atchison,

Brown, Clay, Pottawatomie, Riley and Shawnee counties had been paid more by the treasurer of Shawnee county than the tax commission found them to be entitled to. The other thirty-five counties were each found to be entitled to more than the treasurer of Shawnee county had distributed to them. The commission ordered that the tax should be distributed in accordance with the figures set out in the table, the counties to which there had been an overpayment were ordered to refund the excess to Shawnee county so that it could be redistributed.

This action was brought by the board of commissioners of Shawnee county against the county treasurer of Shawnee county and the commissioners of each of the thirty-five counties to which an additional payment was ordered to enjoin the enforcement of the order.

Rice county filed a motion to quash the service of summons on it and Jefferson county filed an answer. The other thirty-three counties filed demurrers. The trial court sustained the motion of Rice county and overruled the demurrers. On appeal the decision was affirmed. (See *Shawnee County Comm'rs v. Wright,* 147 Kan. 542, 78 P. 2d 44.)

On the question of what property should be taken into consideration in making the distribution pursuant to G. S. 1935, 79-3105, this court said:

"Under these sections there can be no question but that some of these items usually spoken of as personal property, such as rights of way, easements, poles, lines, viaducts, pipes, meters and other similar property, should be considered as real property under the requirements of this mortgage-registration tax law as well as under other laws concerning the taxing of property of public utilities and under the general definition of real property, including 'all rights thereto and interests therein, equitable as well as legal,' for the purpose of distribution of this mortgage-registration tax." (p. 547.)

The judgment of the trial court overruling the demurrers was affirmed because it appeared that the tax commission had taken into consideration some property of the company in some of the counties that, while it was included in the mortgage, was clearly not real property even within the meaning of the definition approved. This included the value of office furniture, materials and supplies.

When the case was sent back to the trial court after the judgment overruling the demurrers had been affirmed the defendant counties again presented the matter of a distribution of this tax to the tax commission, stating in the application that the former order had been held invalid by this court. The tax commission thereupon took

jurisdiction and ordered the same distribution as in the previous order. Just what was the cause of this seeming inconsistency will be discussed later.

After this order had been made the various defendant counties filed answers and cross petitions. In the answers many of the formal allegations of the petition were admitted and the defendants denied that the commission had in making the distribution considered any personal property but had considered solely the real property of the company, as defined by the laws of the state, as construed by this court in this case.

In their cross petition the defendants first referred to the later order of the tax commission, to which reference has been made. The cross petition then alleged the amount that the order of the tax commission found to be due each county from Shawnee county, which that county refused to pay. Judgment was prayed in each cross petition for that amount. After motions of the plaintiff to strike and for judgment on the pleadings had been denied the plaintiff filed its answer to the cross petitions. In these answers the plaintiff alleged that the injunctive relief sought by the plaintiff was the sole subject matter of the action and the cross petitions seeking money judgments could not be asserted; that the later order of the tax commission was made without jurisdiction; that this order did not in any way clarify the former orders; that the orders of the tax commission did not impose any duty upon Shawnee county; that the plaintiff at no time had in its hands the $75,000 referred to in the pleadings, but the distribution was made by the county treasurer solely in his statutory capacity; that any rights defendants may have had were barred by the statute of limitations; that the defendants had filed no claims against Shawnee county, as required by law; that the orders of the tax commission showed that certain of the money directed to be redistributed by Shawnee county had never been received by Shawnee county and if the answering defendants had any valid claims against Shawnee county they were only enforceable as to the proportionate part thereof theretofore distributed to Shawnee county in the purported sum of $17,200.29; that no contention ever arose as to the distribution of the $75,000 except as between the treasurer of Shawnee county and Barton, Edwards, Pawnee, Pratt and Morris counties and the tax commission acquired no jurisdiction to make any order involving the rights of any other parties or counties.

In its reply to the answers of the defendants the plaintiff alleged that the trial court was without jurisdiction to go beyond the first orders of the tax commission; that the defendants had prayed for affirmative relief upon the later order of the tax commission and by doing so had wholly abandoned the earlier order of the tax commission, which was the subject of this litigation; that by making its later order the tax commission recognized the invalidity of its earlier order.

For their replies to the answer of plaintiff to their cross petition the defendants filed a general denial. The motion of the plaintiff for a judgment on the pleadings was denied.

In compliance with the request of parties, the trial court made extended findings of fact and conclusions of law. These findings covered many matters about which there was no dispute; that the fee of $75,000 was paid to the register of deeds of Shawnee county and paid by him to the treasurer of that county; that the mortgage covered property used by the company in the business of generating and conducting electric power; that the $75,000 was distributed by the treasurer based on the assessed value of the property covered by the mortgage and assessed as real estate by the state tax commission sitting as a state board of equalization, and in determining the valuation of the real estate in these counties the county treasurer did not take into consideration the valuation of the poles, lines, easements, rights of way, viaducts, pipes, meters, generators, turbines and other similar property.

The findings then pointed out how the figures used by the county treasurer were taken from the records kept by the tax commission; that when Barton, Edwards, Pawnee and Morris counties filed their application with the tax commission asking for a redistribution of the fund and alleging that the mortgage covered both real and personal property notice was served on the county treasurer of Shawnee county and a hearing had and notice of the contentions of Shawnee county were mailed to all counties interested and several of them did file petitions and pursuant to this application, hearing and notice; that no notice was given Shawnee county of any claim for redistribution by any other counties than the five counties which filed the original application; that in the application before the tax commission it was admitted that the mortgage covered personal as well as real property.

The court further found that the mortgage covered tracts of

land in certain counties and certain operating equipment there as well as in other counties; that there was expressly excluded from the terms of the mortgage all bills, notes and accounts receivable, cash on hand or in bank, contracts, operating agreements, existing leases in which the company was interested, all equipment and materials not installed as a part of the fixed property of the company and the merchandise and supplies acquired by the company for the purpose of resale or leasing in the ordinary business of the company or its customers; that the first order of the tax commission was based on the total assessment for 1935 of all the tangible property of the company, including certain property excluded from the operation of the mortgage; that the figures used by the tax commission were prepared by clerks in the office of the commission and these clerks were not told by the commission to exclude the value of materials, supplies and office furniture, but these clerks were instructed to exclude moneys and credits belonging to the company; that the tax commission erroneously assumed that the mortgage covered real estate in its usually accepted meaning and the operating property of the company and at the time the orders were made erroneously believed that the work sheets reflected only real estate in its usually accepted meaning and such operating property; that in making its later order the tax commission used the same basis of computation it used in making its first order and in making all its orders did not take into consideration G. S. 1935, 79-701 to 79-712, inclusive; that certain stated amounts had been paid by the county treasurer to Atchison, Brown, Clay, Pottawatomie, Marshall and Riley, which counties were not parties to the action, and the money mentioned had never been refunded to Shawnee county; that no claims had been filed by defendant counties against plaintiff; that $34,895.25 of the $75,000 registration fee was apportioned to Shawnee county and paid into its general fund; that no claims had been presented to the auditor of Shawnee county by defendants and the money received had been included in the computation of its budget for 1936; that the inclusion of the valuation of office furniture and supplies by the commission in its computation for the purpose of the distribution was a mistake on the part of the commission caused by failure of the members of the commission to familiarize themselves with the provisions of the mortgage and was not arbitrary, oppressive, fraudulent, capricious nor the result of misinterpretation of a law; that the treasurer of Shawnee county distributed to six counties

amounts in excess of those found due them by the tax commission, as follows:

| "County. | Amount found by Tax Commission | Amount paid by Davis | Excess |
|---|---|---|---|
| Atchison | $2,681.09 | $5,517.00 | $2,835.91 |
| Brown | 676.20 | 1,077.00 | 400.80 |
| Clay | 2,083.24 | 5,097.00 | 3,013.76 |
| Marshall | 1,801.61 | 3,034.50 | 1,232.89 |
| Pottawatomie | 3,381.61 | 3,844.50 | 462.89 |
| Riley | 2,317.38 | 4,642.50 | 2,325.12" |

The court further found that the total amount of the registration fee that was distributed to the other defendant counties by J. Glen Davis, county treasurer of Shawnee county ($16,892.25), was $27,-471.66 less than was apportioned to said counties by the tax commission ($44,363.91); that of said sum Shawnee county had actually retained the sum of $17,200.29, which is 62.611 percent of $27,-471.66. The finding then set out what 62.611 percent of the amount apportioned to each county amounted to. The court then made conclusions of law as follows:

"CONCLUSIONS OF LAW

*No. 1*

"In all its hearings and at the time all its orders were made, and in connection with the matters involved in the distribution of the mortgage registration fee mentioned herein, the state tax commission had acquired jurisdiction of all the parties to this action that had or could have any interest therein.

*No. 2*

"The orders of the state tax commission of August 7 and 11, 1936, and June 30, 1938, being orders of the administrative body created by law to make final distribution and apportionment of the mortgage registration fee involved, and said orders being not arbitrary, oppressive, fraudulent or capricious and not being based on misinterpretation of law, cannot be overthrown and set aside by a court of equity, and this court, in the exercise of its equity powers, cannot enjoin the enforcement of said orders of the state tax commission.

*No. 3*

"The prayer of the plaintiff for injunction against any of the defendants should be denied.

*No. 4*

"The subject matter of this action is the $75,000 mortgage registration fee paid by the Kansas Power and Light Company to the register of deeds of Shawnee county, Kansas, on November 21, 1935, and by her paid to J. Glen Davis, the then county treasurer of Shawnee county, Kansas, and a proper apportionment and distribution of said fee between the several counties interested therein; and the defendant counties have a right in this action to

have judicially determined their claims to the registration fee set up in their cross petitions and to have the apportionment of the state tax commission enforced.

## No. 5

"The items covered by the mortgage, such as rights of way, easements, poles, lines, viaducts, pipes, meters and other similar property, should be considered as real property under the requirements of the mortgage registration law (Sec. 79-3105, G. S. 1935) and for the purpose of distribution of the mortgage registration fee involved herein.

## No. 6

"Property other than real property according to its ordinary meaning and the utility operating property such as is mentioned in the preceding conclusion, should not be considered as real property under the requirements of the mortgage registration law (Sec. 79-3105, G. S. 1935) and for the distribution of the mortgage registration fee involved herein.

## No. 7

"In the receipt and distribution of the mortgage registration fee, J. Glen Davis, then treasurer of Shawnee county, Kansas, acted as a statutory agent for the sole purpose of distributing said fee, and in so doing the distribution made by him was not made as the agent or officer of Shawnee county, Kansas, and Shawnee county, Kansas, is not responsible for any wrongful distribution of said registration fee made by J. Glen Davis.

## No. 8

"The orders of the state tax commission of August 7 and 11, 1936, and June 30, 1938, not being void or invalid, constitute a valid distribution and apportionment of said mortgage registration fee, notwithstanding the fact that there was erroneously considered by the state tax commission in their computation of the apportionment the assessed valuation of office furniture, materials and supplies, and which were not included in the mortgage, and the defendant counties have a right to receive their respective amounts of apportionment as found by the state tax commission.

## No. 9

"Shawnee county is responsible to the defendant counties which did not receive, in the distribution made by J. Glen Davis, treasurer of Shawnee county, Kansas, the amounts apportioned to them by the state tax commission, to the extent that the amount of money paid to Shawnee county in the distribution made by said J. Glen Davis exceeds the amount apportioned to Shawnee county by the state tax commission.

## No. 10

"The matter of the distribution of the mortgage registration fee is a matter which affects the plaintiff and defendant counties in their governmental capacities, and the causes of action set up by the defendant counties in their cross petitions are not barred by any statute of limitation of the state.

## No. 11

"The defendant counties are not barred from a recovery on the causes of action set up in their cross petitions because of their failure to present their claims concerning the mortgage registration fee to the board of county commissioners of Shawnee county, Kansas, within two years after the accrual of said claim, by reason of the nonclaim statute (Sec. 19-308, G. S. 1935); nor by failure of the defendant counties to present said claims to the county auditor before filing their cross petitions, as provided by section 19-615, G. S. 1935, because of the subject matter of the action, the institution of the action by the plaintiff, the nature of the action, and the allegations of the petition that the plaintiff was threatened with a multiplicity of suits by the defendant counties and 'that the rights of all parties claiming an interest in that portion of the mortgage registration fee heretofore distributed to Shawnee county should be adjudicated and determined in this action' and the prayer of the petition for an injunction against the defendant counties 'from instituting or prosecuting any proceeding against the plaintiff or any of its officers to enforce compliance with the orders of the state tax commission or to obtain any relief in accordance with the terms thereof,' and which allegations in effect constituted an invitation to the defendant counties to set up their claims in regard to the registration fee directly in this action, thereby waiving presentation of such claims to the board of county commissioners of Shawnee county and the auditor of said county.

## No. 12

"The excess of the amount apportioned to Shawnee county by J. Glen Davis, treasurer, over the amount apportioned to Shawnee county by the state tax commission being insufficient to pay defendant counties which did not by the distribution of said J. Glenn Davis receive the entire amount apportioned to them by the state tax commission, such defendant counties in this action should be awarded judgment against the plaintiff for their proportionate amounts of the money received by Shawnee county which is in excess of the amount apportioned to it by the state tax commission, and which proportionate amounts are set out in finding of fact No. 41."

Judgment was entered giving the thirty-two defendant counties judgment against Shawnee county for the amount which the court had found was 62.611 percent of the amount that had been apportioned to each of these counties by the tax commission.

Both the plaintiff and the defendants filed motions for a new trial and to set aside certain conclusions of law. All of these motions were overruled by the trial court and both sides appeal.

We shall first discuss the questions raised by the plaintiff.

The first question argued by the plaintiff is that the distribution originally made by the county treasurer of Shawnee county was the correct distribution and the distribution made by the tax commission was incorrect. Should the plaintiff be correct in this argument it would settle the entire case. The question turns upon whether the

distribution of the mortgage registration fee should have been computed by considering real estate as it ordinarily is spoken of rather than the valuation of real estate and the poles, wires and other operating equipment of the company in each county. When the case was here before, this court said:

"Under these sections there can be no question but that some of these items usually spoken of as personal property, such as rights of way, easements, poles, lines, viaducts, pipes, meters and other similar property, should be considered as real property under the requirements of this mortgage-registration tax law as well as under other laws concerning the taxing of property of public utilities and under the general definition of real property, including 'all rights thereto and interests therein, equitable as well as legal,' for the purpose of distribution of this mortgage-registration tax." (*Shawnee County Comm'rs v. Wright,* 147 Kan. 542, 547, 78 P. 2d 44.)

Ordinarily the above holding would settle the question we are considering, but the county argues so vigorously that when the case was here before the question of what property should be included in the term "real estate" was not presented we have decided to reëxamine the question. In this connection the county points out that the provisions of article 7 of chapter 79 of the General Statutes of 1935 were not called to our attention and were not considered by us in reaching the conclusion we reached in *Shawnee County Comm'rs v. Wright,* supra.

The particular statutes urged are G. S. 1935, 79-701 to 79-712. These sections cover the assessment of telegraph, telephone, pipe-line and electric power companies which would include the assessment to meet the property covered by this mortgage.

G. S. 1935, 79-702, provides that companies of this type shall between the first and twentieth days of March of each year make a detailed statement to the tax commission on a form prescribed by it. It is pointed out that one item prescribed is a detailed statement of the real estate owned by the company in Kansas, where situated and the value thereof as assessed for taxation, and that the statute then provides for the furnishing of information as to the length of the lines in Kansas and the number of miles of line in each county and a correct inventory of other property owned by the company in Kansas on the first day of March.

G. S. 1935, 79-703, constitutes the tax commission the state board of appraisers.

G. S. 1935, 79-704, provides that the state board of appraisers shall meet and assess the value of the property of such companies.

G. S. 1935, 79-705, provides that in case of the company refusing to make a statement the board·shall advise itself as best it may on the matters necessary.

G. S. 1935, 79-706, provides any person or company interested may have the right to appear before the board.

G. S. 1935, 79-707, provides for correcting valuation under certain circumstances.

G. S. 1935, 79-708, provides for penalty for failure to make and file a statement.

G. S. 1935, 79-709, provides that after the completion of the assessment the tax commission shall apportion the tax money among the several counties and taxing districts through which the lines run, in the following manner:

"There shall be assigned locally the values assessed against all real estate and all personal property which had a fixed situs on March 1 of the current tax year, including the value of poles and wires; and the remaining part of the assessment, if any, shall be distributed among the several taxing districts so that each district shall be apportioned such a part thereof as is proportionate to the length of the lines owned by the company in the said taxing districts respectively."

Plaintiff points out that the above provisions speak of real estate and personal property, including the value of poles and wires.

G. S. 1935, 79-710, provides for certifying to the various county clerks the amount of assessment apportioned to their counties.

G. S. 1935, 79-711, relates to the assessment of property located in single counties.

G. S. 1935, 79-712, provides that the act shall not apply to any municipally owned plants.

This record shows and the plaintiff argues that the county treasurer presented himself to the tax commission when he was confronted with the duty of apportioning this tax; that he examined the books of the tax commission and took therefrom the item of real estate as it was carried on the books of the commission, both from the reports of the company, made pursuant to G. S. 1935, 79-702, and the appraisement of the board of appraisers, as provided for in G. S. 1935, 79-709.

We must now turn to the statute which directed the county treasurer to make this apportionment. It is part of G. S. 1935, 79-3105. That section reads as follows:

"When a mortgage covers property situated in two or more counties, the registration fee herein provided for shall be paid to the register of deeds and

county treasurer as hereinbefore provided, of the county where it is first presented for record, and the county treasurer so receiving such fee shall apportion the same among the counties in which the real property is situated, in proportion to its assessed valuation, and promptly pay over such proportionate amounts to the respective county treasurers. Should any contention arise as to the division and distribution of such registration fees, the same shall be referred to the state tax commission, who are hereby authorized and directed to decide the same, which decision shall be final."

This section is part of chapter 273 of the Laws of 1925. The first section of that act, G. S. 1935, 79-3101, contains certain definitions. Some of them are as follows:

"The words 'real property' and 'real estate' as used in this act, in addition to the definition thereof contained in the Revised Statutes of 1923, shall include all property a conveyance or mortgage of which is entitled to record as real property or interest therein under the laws of this state. The words 'mortgage of real property' shall include every instrument by which a lien is created or imposed upon real property, notwithstanding that the debt secured thereby may also be secured by a lien upon personal property."

G. S. 1935, 79-3102, provides that before any mortgage of real property shall be received for record there shall be paid to the register of deeds of the county in which such property is situated a registration fee for each one hundred dollars and major fraction thereof, the sum of twenty-five cents, and that after this fee is paid the mortgage shall not otherwise be taxable.

G. S. 1935, 79-3103, provides that the holder of any mortgage of real estate recorded prior to March 1, 1925, may pay the same fee and that thereafter the mortgage shall not be otherwise taxable.

G. S. 1935, 79-3104, provides that the register of deeds shall each day pay to the county treasurer the fees collected for that day and that the county treasurer shall credit such fees to the county general fund.

G. S. 1935, 79-3105, has already been noted.

G. S. 1935, 79-3106, relates to property located partly within and partly without the state.

G. S. 1935, 79-3107, provides that no mortgage executed after March 1, 1925, shall be recorded unless the fee is paid.

Plaintiff argues here that pursuant to the provisions of G. S. 1935, 79-701 to 79-712, the fee we are considering should have been divided on the basis of the item of real estate alone that was returned by the company from the several counties. The argument is based mainly on the provision that those sections require real estate to be returned as a separate item from poles, wires, rights of way, viaducts

and other similar property. We must decide whether all the statutes warrant such a construction. In the first place it should be remembered that G. S. 1935, 79-3101 to 79-3107, being chapter 273 of the Laws of 1925, cover the entire subject of mortgage registration fees. Had it not been for that chapter there would have been no fees here to divide. That chapter provided for collecting the fee and for the handling of the returns from it. Since that is the case we should look to the statute itself for any directions as to what disposition should be made of the fee as paid to Shawnee county. The first section of the statute states some definitions for our guidance in construing it. The one in which we are interested is as follows:

"The words 'real property' and 'real estate' as used in this act, in addition to the definition thereof contained in the Revised Statutes of 1923, shall include all property a conveyance or mortgage of which is entitled to record as real property or interest therein under the laws of this state."

This definition makes the deciding element the question of whether the particular conveyance under consideration was of property which was entitled to registration. No question has been raised in this court by any of the parties but that the mortgage of the poles, wire, rights of way, easements, viaducts, pipes and meters, was entitled to registration. Had this not been true there would not have been nearly as much of a fee to divide. In view of such a definition it would seem that when the words "real property" were used in G. S. 1935, 79-3105, the legislature intended that they should mean just what it had provided in the first section of the act. We are not dependent on that definition alone, however. It should be noted that the section we have been considering also provides that the definition shall be in addition to the definition contained in the Revised Statutes of 1923. There are two definitions contained in those statutes, one is in the chapter devoted to definitions for statutory construction. R. S. 1923, 77-201, subdivision 8, provided as follows:

"The word 'land,' and the phrases 'real estate' and 'real property,' include lands, tenements and hereditaments, and all rights thereto and interest therein, equitable as well as legal."

This definition is broad enough to include all property entitled to registration as provided in G. S. 1935, 79-3101. There was another definition of the term "real estate" contained in R. S. 1923, 79-102, as follows:

"That the terms 'real property,' 'real estate,' and 'land,' when used in this act, except as otherwise specifically provided, shall include not only the land

itself, but all buildings, fixtures, improvements, mines, minerals, quarries, mineral springs and wells, rights and privileges appertaining thereto."

It will be seen that this definition goes more into detail than the one to which we have just referred, but it certainly is broader than the definition plaintiff contends should be given the term and covers in direct terms the same sort of property which the tax commission used in making its order, such as buildings, fixtures and improve-. ments.

G. S. 1935, 79-702, does not purport to contain a definition of the term "real estate." It does provide that for the purpose of enabling the tax commission to assess the property of the company· it should be reported in different items and among these items is "real estate" and it provides that another item is the "length of its lines within the state." We cannot agree, as contended by plaintiff, that the legislature by this provision intended that the term "real estate" should never mean anything more than bare land. In the first place, G. S. 1935, 79-702, was in effect when G. S. 1935, 79-3101, was enacted and no reference whatever was made to it when the later act was enacted nor does an interpretation of the later act require a consideration of the earlier one. The effect of G. S. 1935, 79-701 to 79-712, is much the same as though a statute should require an ordinary taxpayer to return his land in one item and the improvements, such as houses, barns, fences and so forth, in a separate item. No one would contend that such a statute would change the character of the latter property from real to personal property. We adhere to the statement made in *Shawnee County Comm'rs v. Wright,* 147 Kan. 542, 78 P. 2d 44. This statement is:

"Under these sections there can be no question but that some of these items usually spoken of as personal property, such as rights of way, easements, poles, lines, viaducts, pipes, meters and other similar property, should be considered as real property under the requirements of this mortgage-registration tax law as well as under other laws concerning the taxing of property of public utilities and under the general definition of real property, including 'all rights thereto and interests therein, equitable as well as legal,' for the purpose of distribution of this mortgage-registration tax." (p. 547.)

Plaintiff makes a point of the fact that, as the trial court found, R. S. 1923, 79-422, had been superseded by G. S. 1935, 79-702 to 712, but notwithstanding this, this court relied upon that statute in reaching its conclusion in the above case. It is true that the above section was quoted in the opinion, but it was used as a definition, was not the vital point upon which the decision turned, and whether it

is considered or not, requires no change in the ultimate conclusion reached in the case.

When the case was here before it was on an appeal from an order overruling a demurrer to the petition. The case has proceeded to a final judgment—hence there are some points that were raised during the trial of the case, and which were not decided, which are now urged by the plaintiff. · We shall next consider those questions.

The first point argued by plaintiff is that the order of the tax commission, which the plaintiff sought to enjoin, was *ultra vires* and void because it ordered the plaintiff to take money from one county to which it had distributed it and to give it to another county. Plaintiff argues that this is a judicial function and exceeded any authority conferred on the commission. The section under which this distribution was ordered was G. S. 1935, 79-3105. That section first orders the distribution which we have already discussed. It then contains the following provision:

"Should any contention arise as to the division and distribution of such registration fees, the same shall be referred to the state tax commission, who are hereby authorized and directed to decide the same, which decision shall be final."

It is clear that the above provision was intended to provide a means of settling such a question as we have here. Had the county treasurer of Shawnee county gone to the tax commission before making the distribution probably we would not have had this case here. Does the fact that the county treasurer did not take advantage of this statute, but that a county which felt itself aggrieved by the distribution did resort to it, make this statute any less applicable? We think that the language is very general and should be given a liberal interpretation. A contention certainly did arise. It was referred to the tax commission by one of the counties which felt that it had been wronged. Eventually all the counties which had an interest in the matter appeared before the commission and were heard. The statute does not set out any procedure by which the contention should be heard. This was no doubt due to the intention of the legislature that the whole affair should be conducted as informally as possible. At any rate, what was done by the tax commission was not judicial. Its order does not have the effect of a judgment. It remained for the order of the commission to be enforced by an action in court such as this.

In connection with its argument on this point plaintiff points out

that in its last order the tax commission included certain personal property, such as office furniture, materials and supplies, which was not covered by the mortgage and which this court held in *Shawnee County Comm'rs v. Wright*, supra, should not be included. It is urged that this is a further reason why this order is *ultra vires* and void. The trial court found that when the commission was making this order the members were mistaken as to the terms of the mortgage, their action was not arbitrary, capricious, unreasonable or corrupt and when making it the commission was not construing any statute. These findings were supported by the evidence. We cannot disturb them on appeal. When the trial court made these findings it followed that under the provisions of G. S. 1935, 79-3105, which has just been quoted, the decision of the commission was final. (See *Shawnee County Comm'rs v. Wright*, supra.)

The plaintiff next argues that the orders of the commission as to its property were without due process of law in violation of the fourteenth amendment. The basis for this argument is that the statute, G. S. 1935, 79-3105, does not contain any provision for notice and for a hearing. This is true, as has been pointed out heretofore. However, as has been pointed out, there was notice and a hearing in these proceedings. Furthermore, the decision of the commission did not take any property. It simply determined what part of the fee plaintiff was entitled to receive.

The plaintiff next points out that the money judgment against it was obtained on a cross petition in an action that was begun as an action to enjoin the enforcement of the order of the tax commission. It argues that a cross petition for a money judgment may not be asserted in an injunctive action. What the argument amounts to is a contention that after the affirmative relief was denied the plaintiff, then the counties which claimed they had not been paid enough should have each brought a separate action against each county that had been overpaid instead of adjudicating the whole matter in one action, as was done in this case. Such a holding would be contrary to the spirit and letter of our code of civil procedure. In *Farney v. Hauser,* 109 Kan. 75, 198 Pac. 178, this court said:

"In this jurisdiction, where all distinctions between forms of actions at law and of suits in equity are abolished, all matters of justiciable controversy arising between the same parties, whether legal or equitable, and whether already liquidated or merely capable of ascertainment, may be tried and adjudicated in one action."

See, also, *Dodd v. Boles,* 137 Kan. 600, 21 P. 2d 364, where after

quoting G. S. 1935, 60-201, this court quoted from *Minch v. Winters*, 122 Kan. 533, 253 Pac. 578, as follows:

"It should not be forgotten that in the simplification of our civil code and the statutory abolition of the distinctions between actions at law and suits in equity (R. S. 60-201), the legislature was not engaged in curtailing the essential powers of our courts of general jurisdiction. The legislative purpose was rather to emancipate the courts from those ancient artificialities of procedure which handicapped them in dealing out whatever measure of redress, legal or equitable justice, in any case required."

Plaintiff next argues that the defendants had no cause of action against it, but their cause of action was against the county treasurer alone. The basis for this argument is that the county treasurer in making the distribution did not do so as the agent of the county but only by way of carrying out the duty imposed upon him by statute.

As soon as this fee was paid to the register of deeds the statute directed that it be paid by him to the county treasurer. When this money reached the hands of the first official it became public funds. It certainly did not belong to the register of deeds or later to the county treasurer. It must have belonged to Shawnee county pending its proper distribution. In *Myers v. Kiowa County*, 60 Kan. 189, 56 Pac. 11, in considering a similar situation, this court said:

"The money in the treasurer's hands was not actually divided. These funds in the treasurer's hands, the proceeds of other than county taxes, must, in our judgment, be regarded as belonging to the county until they are actually paid over to the state, municipality or person for whom they were collected. The county is responsible for their safe-keeping and if it is not the absolute owner it holds as trustee for the benefit of the real owners." (p. 193.)

See, also, *School District v. Ottawa County Comm'rs*, 133 Kan. 528, 1 P. 2d 88, where this court said:

"There is no question but that the county is responsible for the safe-keeping of the school-district funds until they are actually paid over to the district."

See, also, *School District v. Ellis County Comm'rs*, 138 Kan. 274, 25 P. 2d 578, *Greenwood County Comm'rs v. School District*, 139 Kan. 297, 31 P. 2d 723, and *Woodson County Comm'rs v. City of Yates Center*, 139 Kan. 519, 32 P. 2d 209.

The county treasurer is the statutory agent for the county for which he was elected and qualified and the county is responsible for any money wrongfully paid out by him in pursuance of his duties.

Plaintiff next argues that any cause of action the defendants might have had against it was barred by the failure of defendants to file claims against it with its auditor, as required by law. These were not the type of claims that the law provides shall be submitted to the county auditor and passed on by the commissioner. The statute provided that this entire matter should be submitted to the tax commission. It was submitted. There was nothing left for the county auditor to do. Furthermore, by the filing of this action the plaintiff denied all liability to the defendants. Under such circumstances it would have been useless for defendants to have filed their claims.

The next argument of plaintiff is that any claim the defendants might have had against it was barred by the two-year statute of limitations and the two-year county nonclaim statute. The answer to this argument is that the action is between the plaintiff county on one hand and the defendant counties on the other, each in its governmental capacity as a municipal subdivision. In such cases the statute of limitations does not apply. (See *Osawatomie v. Miami County*, 78 Kan. 270, 96 Pac. 670; *Drainage District v. Wyandotte County*, 117 Kan. 634, 232 Pac. 1056; *Nemaha County Comm'rs v. City of Seneca*, 138 Kan. 895, 28 P. 2d 1034; *Greenwood County Comm'rs v. School District*, 139 Kan. 297, 31 P. 2d 723; *State, ex rel., v. Williams*, 139 Kan. 599, 32 P. 2d 481; and *Woodson County Comm'rs v. City of Yates Center*, 139 Kan. 519, 32 P. 2d 209.)

Plaintiff next points out that the action was brought to set aside the first order of the commission and after the action of this court in affirming the judgment of the trial court in *Shawnee County Comm'rs v. Wright*, supra, the defendants abandoned that order and asked that it be set aside. The trouble with this argument is that the defendants have never attacked the orders of the tax commission. The plaintiff asked that these orders be enjoined, but the relief sought by the defendants was that proper distribution of the fee be had.

Plaintiff next argues that when the defendant counties accepted the payments made by the county treasurer they were estopped to demand a redistribution. This question was answered adversely to the contention of plaintiff in *Shawnee County Comm'rs v. Wright*, supra. We adhere to what was said on that point.

Plaintiff next argues that the trial court erred in failing to make

certain findings of fact requested by it. We have examined this record carefully and it appears that there was substantial, competent evidence to sustain all the findings of fact. Furthermore, aside from the records of the commission, about which there is no dispute, there is not sufficient of the record brought here to enable us to pass on disputed questions of fact.

The same may be said of the next argument of plaintiff that the trial court erred in making certain findings. This disposes of the contentions of the plaintiff. There remains the cross appeal of defendants.

It will be remembered that the trial court gave each of the defendants judgment on its cross petition for the proportionate share of the fee that had been paid to Shawnee county over and above what it was entitled to—that is, a proportionate share of $17,200.29, and denied defendants their proportionate share of the whole overpayment to the other six counties, or a proportionate share of $27,471.66. This judgment was based on the following conclusions of law:

"No. 7

"In the receipt and distribution of the mortgage registration fee, J. Glen Davis, then treasurer of Shawnee county, Kansas, acted as a statutory agent for the sole purpose of distributing said fee, and in so doing the distribution made by him was not made as the agent or officer of Shawnee county, Kansas, and Shawnee county, Kansas, is not responsible for any wrongful distribution of said registration fee made by J. Glen Davis.

"No. 9

"Shawnee county is responsible to the defendant counties which did not receive, in the distribution made by J. Glen Davis, treasurer of Shawnee county, Kansas, the amounts apportioned to them by the state tax commission to the extent that the amount of money paid to Shawnee county in the distribution made by said J. Glen Davis exceeds the amount apportioned to Shawnee county by the state tax commission."

The defendants moved that these conclusions be set aside as contrary to law. This motion was denied and defendants have cross-appealed and argue that this was error.

What we have said in this opinion wherein we held that the cause of action of defendants was against Shawnee county, rather than the treasurer, is conclusive on this question. The trial court erred in refusing to set aside conclusions of law 7, 9 and 12 and in rendering so much of the judgment as depended on them.

In the interest of preventing needless litigation it should be noted

that from what has been said heretofore in this opinion Atchison, Brown, Clay, Marshall, Pottawatomie and Riley counties would have no defense to an action by Shawnee county to collect the amount of the overpayments made to them. The members of the boards of commissioners of these counties being sensible men, actuated by an honest desire to avoid the expense of needless litigation, will, no doubt, refund the amount of such overpayments to Shawnee county upon presentation of a bill.

This is said here in an effort to facilitate the carrying on of the business of these public bodies notwithstanding that the above counties were not parties to this action and are not bound by the judgment herein. (See *Nemaha County Comm'rs v. City of Seneca,* supra, *Greenwood County Comm'rs v. School District,* supra, and *Woodson County Comm'rs v. City of Yates Center,* supra.)

So much of the judgment of the trial court as denied any relief to plaintiff and gave affirmative relief to defendants is affirmed— that portion of the judgment which restricted the judgment given defendants to the proportionate amount of the money received by Shawnee county is reversed with directions to render judgment in accordance with the views herein expressed.

HARVEY, J., not sitting.